James McLaughlin, Plaintiff-Appellant, v. Albert Tilendis, Defendant-Appellee.

John Steele, Plaintiff-Appellant, v. Albert Tilendis, Defendant-Appellee.

Gen. Nos. 52,553, 52,554. (Consolidated.)

First District, Fourth Division.

September 24, 1969.

Rehearing denied October 24, 1969.

Ligtenberg, Goebel & De Jong, of Chicago (John Ligtenberg, Andrew J. Leahy, and Mary Lee Cullen Leahy, of counsel), for appellants.

Ancel, Stonesifer, Glink & Levin, Summerfield & Summerfield, of Chicago (Louis Ancel and Ronald M. Glink, of counsel), for appellee.

MR. JUSTICE STAMOS delivered the opinion of the court.

Plaintiffs, John Steele and James McLaughlin, are schoolteachers, and each brought a separate two-count complaint for slander and malicious interference with contract against defendant, Albert Tilendis, Superintendent of Schools of School District No. 149. On defendant's motion the trial court dismissed the actions stating defendant enjoyed an absolute privilege in his official capacity. Plaintiffs' actions have been consolidated on appeal.

The issue in both actions is whether communications made by a school superintendent to a board of education

regarding the qualifications of teachers are absolutely privileged.

Plaintiff McLaughlin alleged he was a holder of a regular teaching certificate, and pursuant to an agreement with the Board of Education, did teach as a regular teacher for the entire 1964–65 school year and continued to teach pursuant to a subsequent agreement for the 1965–66 school year.

Plaintiff Steele alleged a similar agreement and that he was a holder of a regular teaching certificate, except that he started teaching in September 1965, a year later than plaintiff McLaughlin. Plaintiffs were probationary and not tenure teachers.

Both complaints alleged: plaintiffs enjoyed reputations as persons of honesty, integrity and teachers of ability; defendant had the duty to make recommendations and accurately represent to the Board of Education the effectiveness and capabilities of its teachers; defendant did not observe plaintiffs' teaching but observation was conducted on a regular basis by superiors; plaintiffs discharged their duties with efficiency and integrity and received the approval and commendations of the supervisors assigned to observe plaintiffs; both plaintiffs engaged in the organization of a local union of school teachers; defendant opposed the formation of said union, and seeking to prevent and discourage this union activity, embarked upon a course of action designed to defame and discredit plaintiffs, not because of any deficiency in their teaching, but solely because of plaintiffs' union organizing activity. As to plaintiff McLaughlin, it was further alleged that defendant maliciously and knowing them to be false and without basis, made the following accusations against plaintiff to the Board of Education: that plaintiff's teaching was poor, that plaintiff had done poorly in certain courses at Chicago Teacher's College during the fall of 1964, that plaintiff left his room unattended and that in general lacked ability as a teacher. As to plaintiff Steele,

the allegations were the same, except for the matters pertaining to Chicago Teacher's College.

Plaintiffs alleged that the defendant's false statements, relied upon by the Board of Education to refuse plaintiffs' continued employment as teachers, caused plaintiffs to be injured, their professional reputation damaged, their employment resumé marred, their reputations in the school district community blemished; their rights, guaranteed under Illinois Teacher Tenure Law, have been disregarded and their abilities to participate in the affairs of their local union have been limited. Plaintiffs each asked damages in the amount of $250,000.

The second count of their complaints realleged the foregoing but added that defendant intentionally made the false representations to the Board of Education so that the Board would refuse to continue to employ plaintiffs; that defendant manipulated the Business Meeting Agenda of the Board for March 23, 1966, and defendant made the foregoing representations in order to have the Board adopt a resolution wherein the minutes of the meeting reflected that the Board adopt defendant's recommendations not to retain plaintiffs for the ensuing school year. Plaintiffs also allege damages of $250,000 under this count.

OPINION

Defendant contends the remarks are absolutely privileged to further the public good and insure that the operation of government will not be impeded by irate employees and vexatious litigation. Defendant argues that the remarks complained of were allegedly made at a regularly scheduled meeting of the Board of Education and one of the items on the Board's agenda was defendant's recommendations as to the employment of teachers for the next school year; and that the alleged remarks concerned the qualifications and teaching abilities of plaintiffs, and thus, defendant's remarks related di-

151

rectly to the statutory action required of the defendant [1] and the Board.[2] Defendant further contends that the remarks were not made to, or heard by anyone other than the Board, and Ill Rev Stats, c 102 § 42 (1967), authorizes closed sessions of the School Board, "to consider information regarding appointment, employment or dismissal of an employee."

Plaintiffs contend that the Illinois Constitution, the Illinois Tort Immunity Act and Illinois case law support the proposition that public officers and employees are liable for intentional torts, including defamation.

In Cook v. East Shore Newspapers, Inc., 327 Ill App 559, 64 NE2d 751 (1945) the court said at pages 577–78:

> "Privileged communications are divided into two general classes: (1) those absolutely privileged, and (2) those only conditionally privileged. An absolutely privileged communication is one in respect of which by reason of the occasion on which or the matter in reference to which it is made no remedy can be had in a civil action. This class is narrow and is practically limited to legislative and judicial proceedings and other acts of State, including communications made in the discharge of a duty under express authority of law, or to heads of the executive departments of the State, and matters involving military affairs. A publication which is conditionally or qualifiedly privileged is one made in good faith on any subject matter

---

[1] ". . . In addition to the administrative duties, the superintendent shall make recommendations to the board concerning . . . the selection of teachers. . . ."
Ill Rev Stats, c 122, § 10–21.4 (1967).

[2] "To dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause and to dismiss any teacher, whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it, subject, however, to the provisions of Sections 24–10 to 24–15, inclusive."
Ill Rev Stats, c 122, § 10–22.4 (1967).

152

in which the person publishing has an interest, or in reference to which he has a duty if made to a person having a corresponding interest or duty, even though it contains matter which without this privilege would be actionable. The essential elements of the conditionally privileged communication are good faith and interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and published in a proper manner and to proper parties. Such privileged publications lose their character as such on proof of actual malice."

In Donner v. Francis, 255 Ill App 409 (1930), a laboratory technician in a Veteran's Hospital sued his superior officers for libel and slander, complaining that his superiors had maliciously conspired and knowingly caused false charges to be filed against him. On review, the dismissal of the plaintiff's complaint was affirmed. The alleged false charges complained of by the plaintiff were reports made by defendants pursuant to their duties regarding qualifications and competency of employees.

The court said at pages 412–13:

"All communications, either verbal or written, passing between public officials pertaining to their duties and in the conduct of public business are of necessity absolutely privileged and such matters cannot be made the basis of recovery in a suit at law." (Citing cases.)

the court continued:

"The acts complained of were done by the defendants acting in an official capacity, in what may be called a quasi-judicial capacity. The duty to act was imposed upon them by law and they should not be subjected to vexatious litigation because of such acts; otherwise official independence would be entirely swept away."

In Larson v. Doner, 32 Ill App2d 471, 178 NE2d 399 (1961), a city clerk claimed that the mayor libeled her by presenting a resolution at the regular meeting of the city council, wherein it was moved that the city clerk be suspended from office for malfeasance and negligence until an audit was completed and reported. The trial court granted defendant's motion for summary judgment, and this was sustained on appeal. The court on review quoted extensively from Doner, supra, and held that the resolution in question was a communication pertaining to the duties of the members of the council in the proper conduct of their official business, that the matters contained in the resolution were absolutely privileged, and therefore, that the trial court properly entered summary judgment in favor of defendants.

In Haskell v. Perkins, 165 Ill App 144 (1911), defendant Perkins, in his official capacity as architect of the Chicago Board of Education, filed charges against plaintiff who was a superintendent of construction within the department that defendant headed. The lower court's directed verdict for defendant was affirmed on appeal. The court said at page 150:

> "It is well settled that all communications either verbal or written passing between public officials pertaining to their duties, and in the conduct of the public business, are of necessity absolutely privileged."

Defendant Perkins as plaintiff's superior, had filed a statement of charges against plaintiff with the Building and Grounds Committee of the Chicago Board of Education. Plaintiff was accused of incompetency, insubordination and negligence in the performance of his duties. As a result plaintiff was discharged and commenced the lawsuit alleging that the statement of charges filed by defendant was knowingly false and filed with the malicious motive to have plaintiff discharged.

Plaintiffs rely strongly on dictum in Judge v. Rockford Memorial Hospital, 17 Ill App2d 365, 378, 150 NE2d 202 (1958), but that case involved a private employer which, of course, presents a very different situation.

■ After a careful consideration of the issue involved, the cases cited above and the statutory provisions, we are of the opinion that the statements made by the defendant to the Board of Education concerning plaintiffs were communications within the duty of the defendant as Superintendent of Schools of School District No. 149, and were absolutely privileged. Therefore, the trial court properly dismissed the complaint.

■ Plaintiffs argue that Doner is the most persuasive case in favor of an absolute privilege, but that it is based upon a policy consideration which has been thoroughly discredited by Molitor v. Kaneland Community Unit Dist., 18 Ill2d 11, 163 NE2d 89 (1959), and the Local Government and Governmental Employees Tort Immunity Act, Ill Rev Stats, c 85, §§ 1–101 to 10–101 (1967). We do not agree. Molitor abolished the doctrine of governmental immunity from tort liability as applied to school districts. The consensus of legal opinion since Molitor has been that it completely destroyed the doctrine of governmental tort immunity. 54 Northwestern UL Rev 588 (1959); 55 Ill BJ 29 (1966); Ill L Forum 981 (1966). Neither the holding nor rationale of Molitor leads us to believe that the defense of absolute privilege in defamation actions was or should be destroyed. Neither will we erode the defense of absolute privilege as it has heretofore been established in Illinois by finding that it does not have application to the factual situation before the court.

Plaintiff also argues that if Molitor did not abolish the defense of absolute privilege, the defense was expressly destroyed by the Local Government and Governmental

155

Employees Tort Immunity Act, Ill Rev Stats, c 85, § 2–208 (1967), which provides:

> "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause."

 All duties of the superintendent are set forth in Ill Rev Stats, c 122, § 10–21.4 (1967). The defendant's duty is merely to make recommendations to the Board concerning the selection of teachers, he is not charged nor is it within the scope of his employment to institute or prosecute "any judicial or administrative proceeding." The Board may act upon defendant's recommendation and institute or prosecute a judicial or administrative proceeding, but what weight is to be given to defendant's recommendation is within the sound discretion of the Board. Since the defendant does not have that power this section of the Act has no application to the case at bar.

In the light of the Illinois law on this subject, we are not persuaded by the cases plaintiffs cite from other jurisdictions.

For the foregoing reasons the order of the trial court dismissing plaintiffs' complaint is affirmed.

Judgment affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.