222 N.J. Super. 501 (1988)
537 A.2d 723
PETER BINKEWITZ, SR., PLAINTIFF-APPELLANT,
v.
ALLSTATE INSURANCE COMPANY, CHRISTOPHER R. CHEREWICH, GERARD GULDBECH AND AL LOMBARDI, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1987.
Decided February 4, 1988.
*505 Before Judges R.S. COHEN and LANDAU.
Robert F. Colquhoun argued the cause for appellant (Colquhoun & Colquhoun, attorneys).
Edmund E. Lynch argued the cause for respondents (Lynch & Lynch, attorneys).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
We are called upon to decide whether defamatory words are privileged if uttered in the course of and with some relation to loss appraisal proceedings arising out of an insurance policy provision mandated by statute. We hold that such words are not protected by the absolute privilege accorded to defamatory words uttered in judicial proceedings, but are entitled to a qualified privilege which may be defeated by a showing of abuse of privilege, such as that the utterer knew the words were false or spoke in reckless disregard of their truth or falsity.
Plaintiff is a public adjustor of casualty claims on behalf of insureds. Pursuant to Allstate policy language required by N.J.S.A. 17:36-5.20, lines 123-140, he was named by insureds, whom he did not represent, as an appraiser of certain residential fire claims. Allstate objected, asserting that plaintiff was not "competent and disinterested" as the statute requires. Plaintiff then filed this action for damages against Allstate and certain employees.
Plaintiff's complaint had four counts, one for defamation, one for tortious interference with advantageous business relationships, one for a statutory violation which plaintiff no longer presses, and one for careless, reckless, and negligent conduct. Defendants moved for summary judgment on all counts. The Law Division granted the motion; plaintiff appealed, and we now reverse.
*506 The Law Division held that Allstate's words about plaintiff were reasonably susceptible of a defamatory meaning. It found a qualified privilege immunizing the statements in the absence of a showing of malice. It discerned no malice on defendants' part, and therefore dismissed the defamation count.
The second count, charging tortious interference, fell also, because the acts alleged were the same, and thus the absence of a showing of malice was fatal. The fourth count also alleged the same acts, but characterized them as careless, reckless and negligent. The court found nothing that supported such characterizations, and therefore dismissed that count as well. The court dismissed the third count, charging violation of the Unfair Claims Settlement Practices Act, N.J.S.A. 17:29B-4(9), for reasons plaintiff does not challenge before us.
The context of the dispute is the statutorily required appraisal provision of a homeowner's insurance policy. N.J.S.A. 17:36-5.20. It is invoked when the insured and insurer cannot agree on the amount of a fire loss. Either party may make a written demand for an "appraisal" to settle the amount of the loss. Each party names a "competent and disinterested" appraiser; together they select an "umpire." If the appraisers cannot agree on the amount of the loss, they submit their differences to the umpire. An award may be made by any two of the three.
Plaintiff has acted as an appraiser before in claims against Allstate. Never, apparently, has he appraised a loss by use of realty market data. Allstate took the position that plaintiff was not competent to make such a market data appraisal. In addition, because plaintiff had handled so many claims against Allstate as an adjustor representing insureds, Allstate considered him not to be disinterested.
On February 18, 1985, Allstate wrote to a person who had nominated plaintiff as an appraiser:

*507 Please be advised that we do not feel [plaintiff] is competent to prepare by actual cash value appraisal of subject's property. For that reason we must reject appraisal papers you have submitted.
Allstate made similar responses to nominations of plaintiff as appraiser on other occasions soon thereafter. In them, however, it "rejected" the insureds' choice of plaintiff as appraiser instead of rejecting the appraisal papers. The grounds were either that plaintiff was not competent, not disinterested or not qualified to be an appraiser of the loss. These opinions and their repetition form the basis of plaintiff's causes of action. Allstate's publication of the allegedly defamatory words was limited to communications with the persons who had named plaintiff as appraiser.
We assume for the sake of decision that plaintiff was competent and disinterested in the statutory sense, that he was qualified, and that therefore defendants' words were false. Allstate argues that the words were not defamatory, but only represented non-actionable opinions. In addition, Allstate argues that the words were absolutely privileged because uttered in connection with quasi-judicial proceedings. If not absolutely privileged, Allstate continues, the words merit a qualified privilege, and plaintiff failed to show the malice required to defeat that privilege. Finally, Allstate contends that plaintiff did not suffer any damages.
Addressing the matter of whether the words were defamatory, the Law Division correctly held that the words were not "pure opinion" but implied the existence of undisclosed underlying defamatory facts. In those circumstances, the words were not mere non-actionable opinion. Kotlikoff v. The Community News, 89 N.J. 62 (1982); Karnell v. Campbell, 206 N.J. Super. 81 (App.Div. 1985). They, furthermore, could reasonably be taken to have a defamatory meaning. Molnar v. Star Ledger, 193 N.J. Super. 12, 18 (App.Div. 1984); Hall v. Heavey, 195 N.J. Super. 590 (App.Div. 1984).
Defendant's words were not absolutely privileged. Words uttered by judges, witnesses, attorneys, parties or jurors *508 in the course of judicial or quasi-judicial proceedings, which have some relation thereto, are absolutely privileged, even if made with bad motive or knowledge of their falsity. Citizens State Bk. of N.J. v. Libertelli, 215 N.J. Super. 190, 197 (App. Div. 1987). We hold that appraisal proceedings required by N.J.S.A. 17:36-5.20 are not quasi-judicial proceedings for the purpose of invoking the absolute privilege.
New Jersey has adopted the rule that administrative agencies performing adjudicatory functions generate absolute immunity for statements made in the course of and having some relation to their proceedings. See Matter of Hearing on Immunity for Ethics Complainants, 96 N.J. 669 (1984) (complainants and witnesses in attorney disciplinary proceedings); Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552 (1955) (proceedings before Office of Milk Industry); Hill Homeowners v. Passaic Zon. Bd. Adj., 129 N.J. Super. 170 (Law Div. 1974), aff'd 134 N.J. Super. 107 (App.Div. 1975) (board of adjustment proceedings); Fenning v. S.G. Holding Corp., 47 N.J. Super. 110 (App.Div. 1957) (statements to rent control board).
The purpose is plain. It is to encourage persons involved in quasi-judicial proceedings to express themselves freely and without fear of retribution. The truth-finding process works best that way. Our cases accord with authorities in other jurisdictions. See, e.g., Mazzucco v. N.C. Bd. of Medical Examiners, 31 N.C. App. 47, 228 S.E.2d 529 (1976); (charges before Board of Medical Examiners); Lewis v. Elliott, 628 F. Supp. 512 (D.D.C. 1986) (administrative procedure for government contract bid protests).
The shield of absolute privilege has been extended in some jurisdictions to legally-mandated arbitration proceedings, Ribas v. Clark, 38 Cal.3d 355, 212 Cal. Rptr. 143, 696 P.2d 637 (1985) (required arbitration of matrimonial cause), and to informal grievance and arbitration proceedings called for by collectively-bargained labor contracts. Sturdivant v. Seaboard Service *509 System, Ltd., 459 A.2d 1058 (D.C. 1983); General Motors Corp. v. Mendicki, 367 F.2d 66 (10 Cir.1966); Neece v. Kantu, 84 N.M. 700, 507 P.2d 447 (Ct.App. 1973); Barnes v. Avis Rent A Car System, Inc., 466 F. Supp. 907 (D.D.C. 1979). See also Restatement, Torts 2d, § 585, Comment c (immunity extends to arbiter in labor contract grievance proceeding) at 245 (1977).
In New Jersey, the Supreme Court has not gone that far. In Jorgensen v. Pennsylvania R.R. Co., 25 N.J. 541 (1958), it accorded a qualified privilege to statements made in connection with a disciplinary hearing required upon employee discharge by the collectively-bargained labor contract. The court treated the statements as communications from a party with a duty or interest to a person with a corresponding duty or interest. Such communications are traditionally accorded a qualified privilege. Jorgensen, 25 N.J. at 564;[1]Burke v. Deiner, 97 N.J. 465 (1984); Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 373 (1959); Neigel v. Seaboard Finance Co., 68 N.J. Super. 542 (App.Div. 1961).
In our view, the absolute judicial privilege should not be extended to insurance appraisal proceedings. The privilege rests on important policy considerations. On the one hand is the public's interest in promoting free expression, without fear of retribution, in the course of dispute resolution processes by judges, attorneys, parties and witnesses. On the other hand is the desirability of protecting individuals against uncompensated harm to their reputations.
In balancing those significant interests, absolute immunity best fits some settings and qualified immunity is appropriate to others. See Dairy Stores, Inc. v. Sentinel Pub. Co., 104 N.J. 125, 136 (1986). One determining factor is whether the proceedings afford "safeguards similar to a judicial proceeding." Rainier's Dairies, 19 N.J. at 562. The point is that the danger *510 of abusive defamation is diminished where the forum imposes its own reasons for speaking truthfully and responsibly. Judges and lawyers answer to their oaths and are subject to discipline for misconduct in court; parties and witnesses speak under oath or similar restraint, and may be punished for irresponsible speech. Defamatory words can be restrained or stricken. As Justice Jacobs put it in 1955:
... the potential harm which may result from the absolute privilege is somewhat mitigated by the formal requirements such as notice and hearing, the comprehensive control exercised by the trial judge whose action is reviewable on appeal, and the availability of retarding influences such as false swearing and perjury prosecutions; ... Rainier's Dairies, 19 N.J. at 562.
Other courts agree. The Supreme Court of Washington said: "... the scope of absolute privilege has traditionally been limited to situations in which authorities have the power to discipline as well as strike from the record statements which exceed the bounds of permissible conduct." Twelker v. Shannon & Wilson, Inc., 88 Wash.2d 473, 564 P.2d 1131, 1133 (1977). The Supreme Court of Iowa said:
Absolute immunity, it seems, should be confined to cases where there is supervision and control by other authorities, such as courts of justice, where proceedings are under the able and controlling influence of a learned judge, who may reprimand, fine and punish as well as expunge from records statements of those who exceed proper bounds, and who may themselves be disciplined when necessary. [Mills v. Denny, 245 Iowa 584, 588, 63 N.W.2d 222, 225 (1954)].
The Supreme Court of California denied an absolute privilege to testimony before the judicial commission of a county medical society considering dismissal of plaintiff from membership, because the testimony was not given in a proceeding satisfying the standard of an "official proceeding authorized by law." Hackethal v. Weissbein, 24 Cal.3d 55, 154 Cal. Rptr. 423, 592 P.2d 1175 (1979).
Appraisals are in some ways like arbitrations, but in many ways they are dissimilar. The differences were discussed by the New Jersey Supreme Court in Elberon Bathing Co. v. Ambassador Insurance Co., 77 N.J. 1, 16-17 (1978). Noting that the purposes are the same, the speedy and efficient resolution *511 of disputes without resort to the courts, the Supreme Court held that the requirements of the Arbitration Act, N.J.S.A. 2A:24-1 et seq., did not apply to appraisers' proceedings. It said, at 17:
The distinctions are significant. An agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties, and judgment may be entered upon the award, whereas an appraisal establishes only the amount of loss and not liability. (citations omitted). Arbitration is conducted as a quasi-judicial proceeding, with hearings, notice of hearings, oaths of arbitrators and oaths of witnesses. Appraisers act on their own skill and knowledge, need not be sworn and need hold no formal hearings so long as both sides are given an opportunity to state their positions. (citation omitted).
An appraiser may act on information received informally from others. American Union Ins. Co. v. Stull Bros. Co., 126 N.J. Eq. 64, 66 (Chan. 1939).
Appraisal is a proceeding without a presiding officer with authority to control proceedings and punish misconduct, without formal taking of evidence, without oaths, procedural safeguards, discipline or other court-like restraints. Such a proceeding does not create sufficient safeguards against defamation to justify conferring absolute immunity on its participants.[2]
We are satisfied, however, that the principles of Burke v. Deiner, 97 N.J. 465 (1984), and Coleman v. Newark Morning Ledger Co., 29 N.J. 357 (1959), dictate that a qualified privilege be recognized in the setting of appraisal proceedings. They have some of the relevant functional characteristics of quasi-judicial proceedings. Their importance as alternate means of dispute resolution should lead us to encourage them and promote their efficacy. Ohio Cas. Ins. Co. v. Benson, 87 N.J. 191, *512 199 (1981).[3] There is a similar public interest in free expression by participants without fear of retribution. Communications among participants certainly are among persons with an interest and a duty. In all of the circumstances, we believe it appropriate to recognize the existence of a qualified privilege in this setting.
We further hold that defendants' words were uttered in the course of and with some relation to the appraisal proceeding, and thus participate in a qualified immunity. The proceeding was started by the insured's written demand and nomination of an appraiser. The next contemplated step is for the insurer to name its appraiser. Instead, Allstate "rejected" the insured's choice of appraiser. The appropriate step might have been for Allstate to seek equitable relief. American Union Ins. Co. v. Stull Bros. Co., supra. But, Allstate's response dealt exclusively with the appraisal process and, particularly, with the immediate subject-matter of the choice of appraisers. Thus, if "rejection" may not have been the appropriate response, it was not so wide of the mark as to deprive it of the qualified privilege. The test is "some relation," to the proceeding, which is broader than legal relevance. Brown v. Collins, 402 F.2d 209, 212 (D.C. Cir.1968). All doubts are resolved in favor of the necessary relation. Walker v. Majors, 496 So.2d 726, 730 (Ala. 1986). The words uttered need not be material or relevant to the issues, if they have some reference to the subject matter in dispute. See Restatement, Torts 2d, § 585 Comment e at 246; § 586, Comment c at 248; § 587, Comment c at 249; § 588, Comment c at 250 (1977); McNeal v. Allen, 95 Wash.2d 265, 621 P.2d 1285 (1980). The words complained of here satisfy the test.
*513 A qualified privilege may be defeated by a showing of abuse of privilege (formerly called malice),[4] which is not ill will or bad motive. Marchiano v. Sandman, 178 N.J. Super. 171 (App.Div. 1981). Rather, abuse of privilege, for this case, is either knowledge that the defamatory statement is false or reckless disregard of whether it was false or not.[5]Burke v. Deiner, 97 N.J. 465, 475 (1984). This is a standard which was originally developed for the vindication of First Amendment rights but which is now applicable in New Jersey to common law qualified privileges against defamation actions, at least where the alleged defamation was uttered in a setting in which the public has an interest in promoting free expression. Dairy Stores, Inc. v. Sentinel Pub. Co., 104 N.J. 125, 148-151 (1986).[6] In our view, the statutory basis for appraisal proceedings supplies the requisite public interest. N.J.S.A. 17:36-5.20, lines 123-140.
It would not be enough to show that Allstate's people were hostile to plaintiff and his successful adjustment of claims against Allstate, and that they wished to do him harm. Greenbelt Coop. Pub. Asso. v. Bresler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970). Unless they knew that plaintiff was in fact "competent and disinterested" when they said he was not, or recklessly did not care if he was or was not, they are within the *514 protection of the qualified privilege.[7]
Knowledge or disregard of falsity are mental states which are ordinarily difficult of paper proof and thus peculiarly unsuitable for resolution by summary judgment. Maressa v. New Jersey Monthly, 89 N.J. 176, 197 n. 10 (1982); cf. Kotlikoff v. The Community News, 89 N.J. 62, 67-68 (1982). In this case, there is nothing in the record to foreclose trial of the issue whether defendants abused their privilege by lying or recklessly disregarding the falsity of their statements that plaintiff was not competent and disinterested to act as an appraiser. They plainly believed that they and plaintiff were in adversary positions. There are indications which the jury might find persuasive that they acted precipitously and without investigation to undermine a troublemaker. It is for a jury to determine their attitude toward the words they spoke, if those words are in fact false.
We have assumed for the sake of this decision that plaintiff was competent and disinterested. The assumption is one of mixed law and fact. It well may be that plaintiff was competent and disinterested according to the lenient standard of American Union Ins. Co. v. Stull, 126 N.J. Eq. 64 (Chan. 1939). However, argument may reasonably be made to the contrary. The criteria employed by appraisers in evaluating losses to buildings are not simple and self-evident, but engage their experience and expertise. See Elberon Bathing Co. v. Ambassador Ins. Co., 77 N.J. 1 (1978). It is not beyond doubt that plaintiff has all of the necessary experience and expertise. In addition, the practice of public adjustors' naming one another as appraisers of claims may tend to create an atmosphere discouraging disinterest in the outcome. One hand washing the other is not always conducive to cleanliness. See State v. Osborn, 32 N.J. 117 (1960), which invalidated a statute authorizing law *515 enforcement personnel to sit as magistrates on one another's cases. Justice Proctor stated, at 127:
They are appointed from among those charged with enforcement of the act, and for all that is provided, a magistrate, sitting today to hear a complaint brought by one of his colleagues, might tomorrow bring a complaint before the same colleague then sitting as a magistrate.
See also Barcon Associates v. Tri-County Asphalt Corp., 86 N.J. 179 (1981), dealing with allegations of partiality and the appearance of partiality in the arbitration setting.
It is impossible to say if defendants believed that plaintiff was "competent and disinterested," or if they recklessly disregarded whether he was or not. Their motivations may have dictated their actions, and a jury need not credit their protestations of conscientious rectitude.
The matter of plaintiff's damages is also for the jury. It appears that he lost at least compensation for the appraisals for which Allstate "rejected" him.
The qualified privilege which protects defendants in the libel count also protect them against plaintiff's count charging tortious interference with contract and economic advantage. The libel action privilege grows out of the public policy favoring free expression in statutorily-required informal dispute resolution proceedings, without fear of ensuing libel action, short of outright lies or reckless disregard of falsity. An action for tortious interference based on the same verbal conduct would equally chill the free expression we seek to protect. If the public policy is to be effective, "we must not permit its circumvention by affording an almost equally unrestricted action under a different label." Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 564 (1955) (barring tortious interference action based on defendant's absolutely privileged filing of license revocation proceedings). See also Middlesex Concrete Products v. Carteret Ind. Ass'n., 68 N.J. Super. 85 (App.Div. 1961) (absolutely privileged report to litigant by engineer privileged against tortious interference action).
*516 It is thus settled that words which are absolutely privileged against an action for defamation are also absolutely privileged against an action for tortious interference with contract or economic advantage. The rule is widely accepted. Griffin v. Rowden, 702 S.W.2d 692 (Tex. App. 1985); Hoover v. Van Stone, 540 F. Supp. 1118 (D.Del. 1982); Procacci v. Zacco, 402 So.2d 425 (Fla.App. 1981); McLaughlin v. Copeland, 455 F. Supp. 749 (D.Del. 1978); Brody v. Montalbano, 87 Cal. App.3d 725, 151 Cal.Rtpr. 206 (1978); McLaughlin v. Tilendis, 115 Ill. App.2d 148, 253 N.E.2d 85 (1969). It has been applied to bar both branches of an action charging slander of title and tortious interference. Lone v. Brown, 199 N.J. Super. 420 (App.Div. 1985), certif. vacated 103 N.J. 480 (1986); Procacci v. Zacco, supra. It has also been applied to bar both branches of an action charging injurious falsehood[8] and tortious interference. Western Technologies v. Sverdrup & Parcel, 154 Ariz. 1, 739 P.2d 1318 (Ariz. App. 1986). In general, privileges applicable to actions for defamation may be raised in actions for injurious falsehood. Restatement, Torts 2d § 635.
We now hold that an action for tortious interference must overcome a qualified privilege if it is based on verbal conduct which is qualifiedly privileged against libel action because of constitutional doctrine or public policy favoring free expression. In such a context, the action for tortious interference must fail unless defendant knew the words to be false or recklessly disregarded their falsity. Just as in a defamation action, the qualified privilege is a defense which must be raised by defendant. The cause of action is not, however, established solely by defeating the defense of privilege. The elements of *517 the cause of action must also be established by plaintiff. See Louis Kamm, Inc. v. Flink, 113 N.J.L. 582 (E. & A. 1934).[9]
Plaintiff does not contest dismissal of the count charging violation of the Unfair Claims Settlement Practices Act, N.J.S.A. 17:29B-4(9). The count charging careless, reckless, and negligent conduct was properly dismissed. Plaintiff has no cause of action for negligent defamation.
Reversed and remanded for proceedings not inconsistent herewith as to the counts charging defamation and malicious interference. Otherwise affirmed.
NOTES
[1] In Jorgensen, defendant did not assert a claim of absolute privilege. It argued only for a qualified privilege.
[2] No argument has been made that the function of the defamatory communication in the proceeding should dictate whether it is privileged. It is the nature of the proceeding which has traditionally been held determinative as to all communications, without regard to their place in the proceedings or the extent to which the communications participate in the purpose of the privilege.
[3] Compare Zoneraich v. Overlook Hosp., 212 N.J. Super. 83 (App.Div. 1986), where we gave preclusive effect to judicially-affirmed findings made by an in-house hospital tribunal.
[4] Malice has so many meanings in the law and thus has been such a troublesome concept in the area of defamation that our Supreme Court has decided to discard it as a label, and to substitute the concept of abuse of privilege. Dairy Stores, Inc. v. Sentinel Pub. Co., 104 N.J. 125, 151 (1986).
[5] Privilege may also be abused by excess or inappropriate publication. See Citizens State Bk. of N.J. v. Libertelli, 215 N.J. Super. 190 (App.Div. 1987); Restatement, Torts 2d, §§ 603-605 at 291-296 (1977).
[6] In Dairy Stores, the Court said, at 151, "Although we discard the label [malice], we adhere to the principle that to overcome a qualified or conditional privilege, a plaintiff must establish that the publisher knew the statement to be false or acted in reckless disregard of its truth or falsity."
[7] We do not deal with the issue of defendant's burden of persuasion at trial. See Dairy Stores, 104 N.J. at 155-156.
[8] Injurious falsehood is the publication of matter derogatory to plaintiff's business in general of a kind calculated to prevent others from dealing with plaintiff or otherwise to disadvantageously interfere with plaintiff's relations with others. Prosser & Keeton, The Law of Torts, § 128, p. 963 (5th Ed. 1984). See also Restatement, Torts 2d § 623A.
[9] Rainier's Dairies held that although an absolutely privileged filing of a license revocation complaint could not support a tortious interference claim, it could be the subject of a valid complaint for malicious prosecution of a civil proceeding, "which by its severe restrictions gives due recognition to the counter-policy in favor of free access to judicial and quasi-judicial bodies...." 19 N.J. at 564. This is a matter not now before us, and we express no opinion with respect to the continued viability of this part of Rainier's Dairies.