Eric V. THOMAS, D.M.D., individually, as Administrator, and Administrator ad Prosequen-dum of the Estate of Tracy Rose Thomas, and as parent and natural guardian of Alix Thomas, Plaintiff,

v.

**FORD MOTOR COMPANY and TRW, Inc., Defendants.**

**Civil Action No. 99–451.**

United States District Court, D. New Jersey.

Nov. 18, 1999.

James H. Pickering, Jr., Seaville, NJ, Thomas E. Mellon, Jr., Eliot Alan Kolodny, Mellon, Webster & Mellon, Doylestown, PA, for Plaintiff, Eric V. Thomas, D.M.D.

William J. Conroy, Robert George Devine, White and Williams, LLP, Westmont, NJ, for Defendant, Ford Motor Co.

Robert J. Hafner, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Mount Laurel, NJ, for Defendant, TRW, Inc.

## OPINION

ORLOFSKY, District Judge.

This products liability case, brought under New Jersey law, presents claims relating to injuries allegedly resulting from the premature activation of airbags in a low-speed automobile collision. Plaintiff Eric Thomas ("Thomas") is suing Defendants Ford Motor Company ("Ford"), Breed Technologies, Inc. ("Breed"), and TRW, Inc. ("TRW") for injuries allegedly related to airbags installed on Thomas's 1996 Ford Explorer. Specifically, Thomas contends that the Explorer's airbags deployed improperly when the Thomas family was involved in a minor traffic accident. Thomas claims that he suffered injuries as a result of the improper deployment of the airbags and that the airbags caused the deaths of his pregnant wife and the unborn fetus she was carrying.

At this preliminary stage of the litigation, I must address motions by Ford and TRW to dismiss several of Thomas's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. One of the claims for which dismissal is sought is a negligence claim brought against Ford. Ford's motion to dismiss this claim raises a novel issue not yet addressed by the New Jersey courts, specifically, whether a common-law claim for

negligent installation of a product can be brought against a party separate and apart from a claim brought under New Jersey's Product Liability Act, even though a recent amendment to the Act provides that "installers" are covered by the Act for certain purposes. For the reasons that follow, I find that a separate common-law claim for negligent installation of a product may still be maintained. Accordingly, I shall deny Ford's motion to dismiss Thomas's negligence claim against it. I shall now discuss Ford's and TRW's motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 1, 1999, Thomas filed a Complaint against Ford, Breed, and TRW. *See* Compl. (filed Feb. 1, 1999). The Complaint alleges that on February 9, 1997, Thomas and his family were traveling in the Thomas's 1996 Ford Explorer on Hand Avenue in Cape May Court House, New Jersey. *See id.* ¶ 15. Thomas's wife, Tracy Rose Thomas ("Tracy Thomas"), who was six-months pregnant at the time, was driving. *See id.* Thomas and his daughter, Alix Thomas, were passengers. *See id.* Thomas claims that his wife noticed a deer in the road, and attempted to avoid hitting the deer, but in doing so struck a utility pole. *See id.* ¶ 18. Thomas further alleges that the accident was a relatively minor one because his wife was driving slowly when the accident occurred because of inclement weather conditions. *See id.* ¶¶ 17, 19, 20–21. Nevertheless, the Explorer's driver's side and passenger-side airbags deployed. *See id.* ¶¶ 21, 24. Thomas alleges that the airbags should not have deployed because the accident involved a relatively low-speed collision with the utility pole. *See id.* ¶¶ 21, 23. He also claims that the deployment of the airbags proximately caused his wife's death and the death of his unborn child, as well as his and his daughter's injuries. *See id.* ¶¶ 21–

24. He filed this action on his own behalf, on behalf of the Estate of Tracy Rose Thomas, and on behalf of his daughter, Alix Thomas, *see id.* ¶ 4, seeking recovery from Ford, the manufacturer of the Explorer, and from Breed and TRW, the alleged manufacturers of airbag components installed in the Thomas's Explorer. *See id.* ¶¶ 5–7. On October 12, 1999, Thomas voluntarily dismissed Breed as a party to the action. *See* Notice of Voluntary Dismissal (filed Oct. 12, 1999).

On April 5, 1999, Ford filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss certain of Thomas's claims for failure to state a claim upon which relief may be granted. *See* Ford Mot. to Dismiss (filed Apr. 5, 1999). On May 26, 1999, TRW also filed a motion to dismiss pursuant to Rule 12(b)(6), moving for a dismissal of the same claims Ford seeks to dismiss. *See* TRW Mot. Dismiss (filed May, 26, 1999).

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 (1994).[1]

## II. THE GOVERNING LEGAL STANDARD FOR A MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

"In considering a motion to dismiss under Rule 12(b)(6), the court may dismiss a complaint if it appears certain that the plaintiff cannot prove any set of facts in support of its claims which would entitle it to relief." *Mruz v. Caring, Inc.,* 39 F.Supp.2d 495, 500 (D.N.J.1999) (Orlofsky, J.) (citing *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988)). "While all well-pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor, the Court may dismiss a complaint where, under any set of facts which could be shown to be consistent with a complaint, the plaintiff is not entitled to

---

**1.** Section 1332 states, in relevant part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332(a)(1).

relief." *Id.* (citing *Gomez v. Toledo,* 446 U.S. 635, 636, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990)); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Finally, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (noting that this procedure "streamlines litigation by dispensing with needless discovery and factfinding").

## III. DISCUSSION

### A. *A Claim on Behalf of the Fetus*

■ Ford and TRW claim that the Complaint contains ambiguous language concerning the death of Thomas's unborn child. *See* Ford Mem. Law Supp. Mot. Dismiss at 2 (filed Apr. 5, 1999); TRW Mem. Law. Supp. Mot. Dismiss at ii (filed May 26, 1999). Specifically, Ford and TRW contend that Thomas is attempting to state a statutory claim relating to the death of his unborn child even though such claims are not cognizable under New Jersey's Wrongful Death Act or New Jersey's Survival Act. *See* Ford Mem. Law Supp. Mot. Dismiss at 2–3; TRW Mem. Law. Supp. Mot. Dismiss at ii-iii. Ford and TRW move to dismiss any such claims for failure to state a claim upon which relief may be granted. *See* Ford Mem. Law Supp. Mot. Dismiss at 3; TRW Mem. Law. Supp. Mot. Dismiss at iii. Thomas agrees that claims relating to the death of a fetus are not cognizable under New Jersey statutory law, but argues that it is sufficiently clear from the language of the Complaint that Thomas is not impermissibly seeking recovery on a statutory ground. *See* Pl.'s Answer in Opp'n to Mot. to Dismiss (filed April 5, 1999).

I begin by noting that Ford's, TRW's, and Thomas's understanding of New Jersey law is correct. The Supreme Court of New Jersey held in *Giardina v. Bennett,* 111 N.J. 412, 545 A.2d 139 (1988) that a fetus is not a "person" within the meaning of New Jersey's Wrongful Death Act and that a claim brought under the Wrongful Death Act because of the death of a fetus is barred. *See id.* at 428, 545 A.2d at 147. Moreover, while New Jersey courts have not addressed the issue, at least one federal court has ruled that the *Giardina* holding and the language of the Survival Act imply that an action brought on behalf of a deceased fetus pursuant to the Survival Act is similarly barred. *See Alexander v. Whitman,* 114 F.3d 1392, 1399–1400 (3d Cir.1997). This is not to say, however, that parents are without legal recourse when their unborn fetus dies as a result of the tortious conduct of another. As Ford and Thomas recognize, *see* Ford Mem. Law Supp. Mot. Dismiss at 2–3; Pl.'s Answer in Opp'n to Mot. to Dismiss at 4, parents of deceased fetuses may bring a common-law claim for compensatory damages for emotional distress and mental anguish suffered as a result of the loss of a fetus. *See Giardina,* 111 N.J. at 420, 545 A.2d at 143.

Consequently, the question of whether or not to grant Ford's and TRW's motions to dismiss depends upon whether Thomas is, in fact, seeking relief under the Wrongful Death and Survival Acts for the death of his unborn child. I conclude that Thomas has not asserted a claim for the death of his unborn child under either New Jersey's Wrongful Death Act or the Survival Act. Although there are references throughout the Complaint to the death of Thomas's unborn child, none of these references can be construed to articulate a barred claim. Most of these references appear in Counts wholly unrelated to the Complaint's Wrongful Death and Survival Acts Counts. *See, e.g.,* ¶¶ 46, 49, 58–60, 69–71, 89, 94, 97, 99 (concerning product liability and breach of warranty claims). In fact, Counts I and II of the Complaint, which set forth Thomas's Wrongful Death and Survival Acts claims, make no direct mention of the death of Thomas's unborn

child at all. Only one paragraph in the Complaint even potentially supports Ford's and TRW's view that a barred claim is alleged: "Individually, Dr. Thomas claims as damages any and all damages recoverable as a result of the death of Tracy Rose Thomas and his unborn baby as well as any damages to which he is entitled under N.J.S. 2A:31–1 *et seq.* and N.J.S. 2A:15–3." Compl. ¶ 26. This language is potentially ambiguous because the death of Thomas's unborn child and the statutory citations to the Wrongful Death and Survival Acts appear in the same paragraph. Nevertheless, I find that it is clear that the paragraph seeks recovery under the Wrongful Death and Survival Acts as alternatives to recovery for the death of Thomas's unborn child. It is especially clear that relief is not sought on behalf of Thomas's unborn fetus pursuant to the Survival Act. No Estate is raised on behalf of the fetus and paragraph twenty-six indicates from the outset that the claim is being made on behalf of Thomas "individually." Given the language of the Complaint and that on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), I must draw all reasonable inferences in favor of the Plaintiff, *see Mruz*, 39 F.Supp.2d at 500, I find that Thomas has not pled any barred statutory claims. Accordingly, I shall deny Ford's and TRW's motions to dismiss any claim by Thomas attempting to recover for the death of his unborn child under either New Jersey's Wrongful Death Act or New Jersey's Survival Act.

### B. *Claim for Hedonic Damages*

Ford and TRW also move to dismiss Thomas's claim for "hedonic damages." *See* Ford Mem. Law Supp. Mot. Dismiss at 3–7; TRW Mem. Law. Supp. Mot. Dismiss at iii-iv. They contend that hedonic damages, or damages for the "loss of life's pleasures," are available only under New Jersey's Survival Act and not New Jersey's Wrongful Death Act. *See* Ford Mem. Law Supp. Mot. Dismiss at 3–4; TRW Mem. Law. Supp. Mot. Dismiss at iii.

Furthermore, they assert that hedonic damages are only available to the extent that Tracy Thomas's death was not instantaneous and that she survived the deployment of the airbags for some interval of time before she died. *See* Ford Mem. Law Supp. Mot. Dismiss at 5–6; TRW Mem. Law. Supp. Mot. Dismiss at iv. TRW argues additionally that Tracy Thomas had to be conscious during this interval for hedonic damages to be available. *See* TRW Mem. Law. Supp. Mot. Dismiss at iv. Ford and TRW contend that the Complaint in this case is insufficient in that it does not allege that Tracy Thomas's death was not instantaneous. *See* Ford Mem. Law Supp. Mot. Dismiss at 6–7; TRW Mem. Law. Supp. Mot. Dismiss at iv. Again, Thomas substantially agrees with Ford and TRW's legal analysis. *See* Pl.'s Answer in Opp'n to Mot. to Dismiss at 5. He contends, however, that the Complaint need not allege with any specificity whether and to what degree Tracy Thomas survived the deployment of the airbags. *See id.*

For the most part, the parties have set forth the law concerning hedonic damages with substantial accuracy. Hedonic damages are available under New Jersey's Survival Act and not under New Jersey's Wrongful Death Act. *See Clement v. Consol. Rail Corp.*, 734 F.Supp. 151, 156 (D.N.J.1989) (Fisher, J.). Moreover, hedonic damages are available only to the extent that Tracy Thomas survived the tortious act that proximately caused her death for some period of time. *See id.* at 155–56. She need not have been conscious during this interval, however, for hedonic damages to be available. *See Eyoma v. Falco*, 247, N.J.Super. 435, 445–46, 247 N.J.Super. 435, 589 A.2d 653, 658 (App. Div.1991).

That being said, I find that the Complaint in this case adequately states a claim for hedonic damages upon which relief may be granted. Federal Rule of Civil Procedure 8(a) requires that a plaintiff's

complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R.Civ.P. 8(a)(2). Under the liberal pleading regime that Rule 8(a)(2) establishes, a complaint "need only [ ] 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *High Tech Enterprises, Inc. v. Semon*, No. CIV.A. 96–6017, 1997 WL 59323, at *1 (E.D.Pa. Feb.10, 1997) (quoting *Conley*, 355 U.S. at 47, 78 S.Ct. 99); *Blackwell v. Power Test Corp.*, 540 F.Supp. 802, 814 (D.N.J.1981) (Meanor, J.). Conversely, Rule 8(a)(2) does "not require a complainant to set forth in detail the facts upon which the claim is based." *Breslin v. Vornado, Inc.*, 559 F.Supp. 187, 191 (E.D.Pa. 1983); *see also Schaedler v. Reading Eagle Publication, Inc.*, 370 F.2d 795, 798 (3d Cir.1967). "The Federal Rules of Civil Procedure reject the notion that pleading is a game of skill in which one misstep by counsel may decide the outcome." *Breslin*, 559 F.Supp. at 191. In this case, the Complaint alleges that Ford's and TRW's airbags caused Tracy Thomas's death by improperly deploying, *see* Compl. ¶¶ 4–7, 21–24, and states that:

> Dr. Thomas, as Administrator of the Estate of Tracy Rose Thomas, deceased, claims damages for the conscious pain and suffering and loss of life's enjoyment and hedonic damages suffered by Tracy Rose Thomas, resulting from Defendants' acts and/or omissions, as set forth herein, from the time of the infliction of the injuries, up to and including the time of her death on February 9, 1997 as permitted under N.J.S. 2A:15–3.

Compl. ¶ 39. I find that this pleading gives Ford and TRW adequate notice of Thomas's claim for hedonic damages. It informs Ford and TRW that hedonic damages are being sought and why. It also cites the relevant statutory authority and notifies Ford and TRW of the essential factual issue that such a claim raises, i.e., whether the decedent survived the inflic-

tion of her injuries for any interval of time. Moreover, the claim set forth in paragraph thirty-nine is one that the parties agree is cognizable under New Jersey law. Ford's and TRW's primary contention is that the pleading does not allege that Tracy did in fact live for any period of time after the Explorer's airbags deployed. *See* Ford Mem. Law Supp. Mot. Dismiss at 6–7; TRW Mem. Law. Supp. Mot. Dismiss at iv. The liberal pleading regime established by the Federal Rules of Civil Procedure, however, does not require such a fact to be alleged. It can reasonably be inferred, *see Mruz*, 39 F.Supp.2d at 500, that if Thomas is seeking hedonic damages for the interval of time Tracy Thomas lived after the airbags were deployed, Thomas also alleges that Tracy Thomas did not die instantaneously.

■ Ford and TRW also contend that Thomas cannot prove that Tracy Thomas survived impact because he was knocked unconscious by the Explorer's passenger-side airbags, rendering him unavailable as a witness to Tracy's death and its timing. *See* Ford Mem. Law Supp. Mot. Dismiss at 6; TRW Mem. Law. Supp. Mot. Dismiss at iv. Medical reports not yet in evidence and testimony from other potential witnesses may support Thomas's claim, however, without the need for Thomas to testify. In other words, there are facts that Thomas could prove in support of his claim for hedonic damages which would entitle him to relief. *See Mruz*, 39 F.Supp.2d at 500. In short, I find that Thomas has adequately alleged a valid claim for hedonic damages and that Ford and TRW are essentially seeking dismissal of this claim by raising factual disputes better resolved after a fuller record has been developed in this case. They are attempting to shoehorn a summary judgment motion into a motion to dismiss for failure to state claim. Accordingly, I shall deny Ford's and TRW's 12(b)(6) motions to dismiss Thomas's claim for hedonic damages.[2]

**2.** I note that while the "adequacy of a com-   plaint is a procedural concern and, therefore,

### C. Negligence and Breach of Warranty Claims and the Product Liabilities Act

Ford and TRW move to dismiss Thomas's negligence and breach of warranty claims. They argue that New Jersey's Product Liability Act provides the sole avenue of recovery in product liability cases and that claims for negligence and breach of warranty do not exist outside of the Product Liability Act. *See* Ford Mem. Law Supp. Mot. Dismiss at 7–8; TRW Mem. Law. Supp. Mot. Dismiss at iv–v. Thomas counters that breach of warranty claims for breaches of express warranties have not been subsumed by New Jersey's Product Liability Act. *See* Pl.'s Answer in Opp'n to Mot. to Dismiss at 6–7. He further maintains that New Jersey's Product Liability Act does not preclude a common-law claim for negligent installation of a product. *See id.*

■■■ Thomas's breach of warranty claims against Ford and TRW shall be dismissed for failure to state a claim upon which relief may be granted. New Jersey courts have interpreted the language of New Jersey's Product Liability Act to preclude independent claims for breach of an *implied* warranty in products liability cases but have found that independent claims for a breach of an *express* warranty are still permitted by the Act. *See Potwora v. Grip,* 319 N.J.Super. 386, 400–01, 725 A.2d 697, 704 (App.Div.1999); *Ramos v. Silent Hoist & Crane Co.,* 256 N.J.Super. 467, 473, 607 A.2d 667, 669–670 (App.Div. 1992); *Tirrell v. Navistar Int'l, Inc.,* 248 N.J.Super. 390, 398, 591 A.2d 643, 647 (App.Div.1991). In Counts IX and XI of the Complaint, Thomas alleges that Ford and TRW "breached the aforesaid warranties . . . both express and implied." Compl. ¶¶ 88, 98. Because as a matter of law Thomas is not entitled to relief for a breach of implied warranty separate from the relief he may seek under New Jersey's Product Liability Act, I shall grant Ford and TRW's motion to dismiss Counts IX and XI of the Complaint and grant Thomas leave to amend the Complaint to replead breach of express warranty claims, which may still be pled independently of Product Liability Act claims under New Jersey law.

■■■ Thomas's negligence claim against TRW shall be dismissed on similar grounds. New Jersey's Product Liability Act had the same impact on negligence claims as it had on breach of implied warranty claims: Negligence claims against manufacturers of defective products are no longer recognized by New Jersey courts as independent claims in product liability actions. *See Potwora,* 319 N.J.Super. at 400–01, 725 A.2d at 704; *Ramos,* 256 N.J.Super. at 473, 607 A.2d at 669–670; *Tirrell,* 248 N.J.Super. at 398, 591 A.2d at 647; *Canty v. Ever–Last Supply Co.,* 296 N.J.Super. 68, 79, 685 A.2d 1365, 1371 (Law Div.1996). Recovery for negligence in a products liability action must be sought under the Product Liability Act. *See Potwora,* 319 N.J.Super. at 400–01, 725 A.2d at 704; *Ramos,* 256 N.J.Super. at 473, 607 A.2d at 669–670; *Tirrell,* 248 N.J.Super. at 398, 591 A.2d at 647; *Canty,* 296 N.J.Super. at 79, 685 A.2d at 1371. As a result, Thomas's common-law claim against TRW for TRW's alleged negligent manufacture of airbag modules, *see* Compl.

is governed by federal law," *Breslin,* 559 F.Supp. at 191, my decision today is in accordance with New Jersey's law on hedonic damages. Under New Jersey law, plaintiffs seeking hedonic damages benefit from a "presumption of continuing life until the contrary is proved" when the timing of the decedent's death is uncertain. *Smith v. Whitaker,* 313 N.J.Super. 165, 186–87, 189, 713 A.2d 20, 31–32, 33 (App.Div.1998). This presumption seems to be a corollary of the *Whitaker* court's observation that "[d]eath rarely may be instantaneous in fact." *Id.* at 185, 713 A.2d at 31. Refusing to grant Ford's and TRW's motion to dismiss at this early stage in the litigation when Thomas has adequately raised his claim, the timing of Tracy Thomas's death is uncertain, and Ford and TRW have offered no proof that Tracy Thomas died instantaneously is in keeping with the spirit of this presumption.

¶¶ 82–84, cannot be maintained. Accordingly, I shall dismiss Count VII of the Complaint, alleging negligent manufacture on the part of TRW, *see id.*, for failure to state a claim upon which relief may be granted.

▮ Thomas's negligence claim against Ford requires a slightly more complicated analysis because New Jersey courts have recognized a common-law claim for negligent installation of a product even in the aftermath of the enactment of the New Jersey Product Liability Act. In *Ramos,* plaintiff Carlos Ramos ("Ramos") sued defendant Foremost Electro–Service Co. ("Foremost") because he had received multiple injuries as a result of becoming stuck in a winch. *See Ramos,* 256 N.J.Super. at 472, 607 A.2d at 669. Foremost installed the electrical system that powered the winch. *See id.* at 471–72, 607 A.2d at 668–69. While operating the winch one day, Ramos became stuck between the winch and a cable pulled by the winch. *See id.* at 472–73, 607 A.2d at 669. Ramos could not extricate himself and because Foremost placed the winch's power switch far from the winch, Ramos could not turn the winch off. *See id.,* 607 A.2d at 669. As a result, he was drawn into the winch, suffering injuries so severe that his leg had to be amputated. *See id.,* 607 A.2d at 669. The *Ramos* court concluded that a negligence action could be maintained against Foremost separate from any claims that were required to be brought under the Product Liability Act. *See id.* at 476–77, 607 A.2d at 671–72. The court acknowledged that the Product Liability Act required the consolidation of all theories of product liability into a single product liability action under the terms of the Act. *See id.* at 473, 607 A.2d at 669–70. The court noted, however, that the Act subjected only manufacturers and sellers to liability under the Act's terms. *See id.* at 474–77, 607 A.2d at 670–71. Foremost had merely installed the electrical system that powered the winch. *See id.* at 476, 607 A.2d at 671. As a result, the *Ramos* court concluded that

Foremost was a service provider who fell outside the ambit of the Act and who could be sued on a common-law negligence claim. *See id.* at 477, 607 A.2d at 672. Had Foremost installed a defective product—a defective power switch, for example—the *Ramos* court would have treated Foremost as manufacturer or seller of the product, and Foremost would have been liable only under the Act. *See id.* at 476–77, 607 A.2d at 671. Because no component of the electrical system was defective and Foremost's installation was the sole cause of Ramos's injuries, however, Foremost fell outside of the Act. *See id.,* 607 A.2d at 671–72.

Were *Ramos* to apply to this case, it might save Thomas's negligence claim against Ford from dismissal. If the Explorer's airbags were not defective and the injuries to Thomas and his wife could be attributed to Ford's installation of the Explorer airabgs, *Ramos* would allow Thomas to seek recovery against Ford on a negligence claim brought separately from the Product Liability Act. There would be a set of facts that, if proved, would entitle Thomas to relief, *see Mruz,* 39 F.Supp.2d at 500, and I would be obligated to deny Ford's motion to dismiss Thomas's negligence claim for failure to state a claim upon which relief could be granted.

▮ Ford argues, however, that the holding in *Ramos* that a claim for negligent installation exists outside the ambit of the Product Liability Act has been superseded by an amendment to the Product Liability Act. *See* Ford Reply Mem. at 2–3 (filed Apr. 5, 1999). In 1995, approximately three years after *Ramos* was decided, the New Jersey legislature passed an amendment to the Product Liability Act extending the coverage of the Act to "product sellers" and defined a "product seller" as:

> any person who, in the course of a business conducted for that purpose: sells; distributes; leases; *installs;* prepares or assembles a manufacturer's product according to the manufacturer's plan,

intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or is otherwise involved in placing a product in the line of commerce.

N.J.S.A. 2A:58C–8 (emphasis added). While the New Jersey courts have analyzed claims for negligent installation in only two cases since the passage of this amendment, in neither case did they address the effect of this amendment on the *Ramos* holding. *See Potwora*, 319 N.J.Super. at 400–01, 725 A.2d at 704; *Ridenour v. Bat Em Out*, 309 N.J.Super. 634, 642, 707 A.2d 1093, 1097 (App.Div.1998). The injuries in those cases arose before the effective date of the amendment, rendering the amendment inapplicable to those claims. *See Potwora*, 319 N.J.Super. at 390, 725 A.2d at 699; *Ridenour*, 309 N.J.Super. at 641, 707 A.2d at 1096. In instances where a state's highest court has not addressed the precise issue presented to a federal court sitting in diversity, a federal court must predict how the state's highest court would resolve the issue. *See Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1373 & n. 15 (3d Cir.1996); *Borman v. Raymark Indus., Inc.*, 960 F.2d 327, 331 (3d Cir.1992); *Gruber v. Owens–Illinois Inc.*, 899 F.2d 1366, 1369 (3d Cir.1990). Consequently, I must now predict how the New Jersey Supreme Court would interpret the 1995 amendment to the Product Liability Act to affect the *Ramos* holding. Ordinarily, I would repair to the state's appellate court decisions for guidance, *see Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir.1991), a luxury unavailable to me in this instance because no New Jersey appellate court— or trial court, for that matter—has addressed the effect of the 1995 amendment on the *Ramos* holding.

I hold that a claim for negligent installation can still be brought as a separate claim from a claim brought under New Jersey's Product Liability Act. In other words, I find that the *Ramos* holding survived the 1995 amendment of the Act.

First, there is no indication that the New Jersey legislature intended to supersede the *Ramos* holding. The New Jersey legislature's intent in adopting the amendment was to rescue persons it categorized as "product sellers" from strict liability in certain circumstances:

> This bill, as amended, provides that in a products liability action against a product seller, the product seller may file an affidavit certifying the correct identity of the manufacturer.... Upon the filing of the affidavit, the product seller would be relieved of all strict liability claims against him.

N.J.S.A. 2A:58C–8, Senate Commerce Committee Statement. Second, the language of the amendment suggests that it does not nullify the holding in *Ramos*. The amendment provides that a product seller may be held liable under the Product Liability Act if the product seller exercises significant control over a defective product, knows or should know a product is defective, or creates a defect in a product. *See* N.J.S.A. 2A:58C–9d(1)–(3). Regardless of whether the 1995 amendment imposes liability on product sellers or relieves them from liability, the amendment presupposes the existence of a defective product. For example, liability is imposed on an installer under the terms of the Act if the installer installs a product known to be defective. The *Ramos* case, however, addressed a different situation. *Ramos* involved a circumstance in which there was no defective product, but only a defective installation. Put another way, it involved the improper installation of an otherwise properly functioning product. While the 1995 amendment brings installers within the ambit of the Product Liability Act in instances where installers trade in defective products, the amendment to the Act was not adopted to bring installers within the coverage of the Act for improperly installing properly-functioning products.

Consequently, I shall deny Ford's motion to dismiss Count VI of the Complaint for failure to state a claim upon which

relief may be granted. Thomas may be entitled to relief on a claim for negligent installation pled separately from any Product Liability Act claim since it may yet be proved that Ford improperly installed otherwise well-functioning and non-defective airbag components.

### D. *Loss of Consortium Claims*

■ Finally, Ford and TRW move to dismiss Thomas's loss of consortium claims. Count XII of the Complaint seeks relief for the "mental anguish and distress, the loss of consortium and the loss of companionship" experienced by Thomas as a result of the death of his wife. Compl. ¶ 101. Count XIII seeks relief for the "mental anguish and distress and the loss of guidance, comfort, aid, companionship, care, love, assistance and tutelage" suffered by Alix Thomas as a result of the loss of her mother. *Id.* ¶¶ 103–04. Ford and TRW essentially claim that the measure of the damages that may be recovered for the death of Tracy Thomas are defined by New Jersey's Wrongful Death Act and that these separate Counts, entitled "Loss of Consortium" Counts, must be dismissed for failure to state a claim upon which relief may be granted. *See* Ford Mem. Law Supp. Mot. Dismiss at 8–9; TRW Mem. Law. Supp. Mot. Dismiss at v–vii. Thomas agrees that the Wrongful Death Act provides the measure of damages available for the death of Tracy Thomas, but argues that he is entitled to recovery on the grounds stated in the Complaint's "Loss of Consortium" Counts even if the relief is sought separately from the relief sought in the Complaint's "Wrongful Death" Count. *See* Pl.'s Answer in Opp'n 8–9 & n. 1.

■ Thomas's loss of consortium claims shall be dismissed. This Court confronted the issue raised by Ford's and TRW's motion to dismiss nearly forty years ago. In *Hetman v. Fruit Growers Express Co.*, 200 F.Supp. 234 (D.N.J.1961) (Wortendyke, J.), the defendant moved to dismiss the fourth count of a complaint brought by Margaret Hetman seeking damages for the loss of companionship of her husband, who died because of the defendant's alleged negligence. *See id.* at 239. The defendant claimed that the fourth count failed to state a claim upon which relief may be granted and moved to dismiss the claim or, in the alternative, to strike the claim. *See id.* The court stated:

> The fourth count, in substance, alleges that the death of the decedent which occurred on February 22, 1960, resulted from injuries inflicted upon the plaintiff's intestate in the occurrence of April 22, 1958. Obviously this count invokes the New Jersey Death Act, N.J.S.A. 2A:31–1 et seq. It is, of course, elementary and apparent from the language of this Act itself, that the damages recoverable for wrongful death are limited to the deprivation of a reasonable expectation of pecuniary advantage which would have resulted from the continuance of the life of the deceased. Loss of consortium is not a measure of such damages, nor is grief or mental anguish suffered by the survivors. In determining pecuniary injury resulting from wrongful death, the injury may not consider injury to the feelings of the survivors nor mental suffering or loss of society. The criterion of recovery is reasonable expectation of a pecuniary advantage which has been extinguished by the act occasioning the death.

*Id.* (citation omitted). The *Hetman* court then struck the fourth count, granting leave to the plaintiff to amend her complaint so that she could conform it to the rule of damages established under the Wrongful Death Act. *See id.* The Court's language and the action it took in the *Hetman* case underscore legal propositions as true today as they were forty years ago: The Wrongful Death Act provides the exclusive measure of damages for loss suffered in the aftermath of a person's wrongful death, and claims that seek damages separate from those provided for under

the Wrongful Death Act do not state a claim upon which relief may be granted. More recent New Jersey case law has defined the contours of the damages available under New Jersey's Wrongful Death Act:

> The fundamental aim of our act is compensation for the pecuniary losses suffered by the survivors of those killed by wrongful acts. The amount of recovery is based upon the contributions, reducible to monetary terms, which the decedent reasonably might have been expected to make to the survivors. . . . Damages are awarded only for pecuniary loss and do not include injury to the feelings, mental suffering or loss of society and companionship. Damages may include the monetary value of loss of services, such as the economic worth of services of a deceased mother to her minor children, but such recovery is solely for pecuniary loss . . . but it does not include the loss of companionship and society as such. Economic dependency, however, is not the sole basis for damages for pecuniary loss; minor children may recover for the pecuniary value of the loss of the care, guidance and advice of a parent during their minority. Additionally, the statute permits an award of the hospital, medical and funeral expenses incurred for the deceased.

*Alfone v. Sarno,* 168 N.J.Super. 315, 321–22, 403 A.2d 9, 12 (App.Div.1979) (citations and quotations omitted). By seeking relief for the "mental anguish and distress, the loss of consortium and the loss of companionship" experienced by Thomas as a result of the death of his wife, Compl. ¶ 101, Count XII of the Complaint clearly states a claim for relief which, under the *Alfone* court's interpretation of the Wrongful Death Act, may not be granted. *See Alfone,* 168 N.J.Super. at 321–22, 403 A.2d at 12. Consequently, I shall grant Ford's and TRW's motions to dismiss Count XII for failure to state a claim upon which relief may be granted. Insofar as Count XIII seeks relief for the loss of "guidance,"

"aid," "care," "assistance," and "tutelage," Compl. ¶¶ 103–04, suffered by Alix Thomas as a result of her mother's death, it states a claim recognized under New Jersey law. *See Alfone,* 168 N.J.Super. at 321–22, 403 A.2d at 12. It does not, however, state a claim for which relief may be granted inasmuch as it seeks recovery for Alix Thomas's "mental anguish and distress" and loss of "comfort," "companionship," and "love," Compl. ¶¶ 103–04, since recovery for these losses is not permitted under New Jersey law, even for children. *See Alfone,* 168 N.J.Super. at 321–22, 403 A.2d at 12. Because the former claims have already been pled in the Complaint's Wrongful Death Count (Count I), *see* Compl. ¶ 32, I shall follow the *Hetman* court's lead and dismiss Count XIII for failure to state a claim. In sum, I shall grant Ford's and TRW's motions to dismiss Counts XII and XII.

Additionally, I will also go one step farther than Ford and TRW would have me go. The Complaint's "Wrongful Death" Count, Count I, seeks recovery for damages not provided for by the Wrongful Death Act. Specifically, Thomas seeks recovery for "loss of comfort, society, and companionship," among other things. Compl. ¶ 32. Pursuant to my authority to dismiss claims for failure to state a claim upon my own motion, *see Bryson v. Brand Insulations,* Inc. 621 F.2d 556 (3d Cir. 1980), I shall dismiss Count I and grant Thomas leave to amend the Complaint to re-plead a Wrongful Death Count that seeks the appropriate form of recovery under the Wrongful Death Act.

## IV. CONCLUSION

For the foregoing reasons, Ford Motor Company's and TRW, Inc.'s motions to dismiss for failure to state a claim shall be granted in part, denied in part, and dismissed in part. Specifically, I shall deny Ford's and TRW's motions to dismiss any claim by Thomas seeking damages for the death of his unborn child under the New Jersey Wrongful Death Act or the New

Jersey Survival Act, having found that Thomas has not asserted any such claim. I shall deny Ford and TRW's motions to dismiss Thomas's claims for "hedonic damages" on the ground that the Complaint sufficiently states a claim for such recovery. Third, I shall grant Ford's and TRW's motions to dismiss Counts IX and XI, which seek recovery for breaches of implied and express warranties, because New Jersey law requires claims based on breach of implied warranty theories to be consolidated into a single product liability action under the New Jersey Product Liability Act. I shall grant Thomas leave to amend the Complaint to re-plead a breach of express warranty claim. Similarly, I shall grant TRW's motion to dismiss Count VIII for failure to state a claim, because negligence claims against manufacturers of defective products must be consolidated into a Product Liability Act claim under New Jersey law. I shall deny, however, Ford's motion to dismiss Count VI of the Complaint, alleging negligence on the part of Ford. Although New Jersey courts have yet to address the effect of the New Jersey legislature's amendment of the Product Liability Act, bringing "installers" within the ambit of that Act, I find that it was not the intent of the legislature or the effect of the language of the amendment to deprive plaintiffs of a common-law claim for the negligent installation of a non-defective product. Finally, I shall grant Ford's and TRW's motions to dismiss Counts XII and XIII, asserting claims for "Loss of Consortium," and Count I, asserting claims for "Wrongful Death," and shall grant Thomas leave to amend the Complaint re-plead a "Wrongful Death" Count that seeks the appropriate forms of relief. An amended Complaint, consistent with this Opinion, shall be filed within twenty days of the filing of this Opinion.

This Court will enter an appropriate order.

### ORDER

This matter having come before the Court on the motion of Defendants Ford Motor Company ("Ford") and TRW, Inc. ("TRW"), to dismiss certain claims for failure to state a claim upon which relief may be granted, William J. Conroy, Esq., and Robert George Devine, Esq., White and Williams, LLP, appearing on behalf of Ford, Robert J. Hafner, Esq., Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, appearing on behalf of TRW, and Thomas E. Mellon, Jr., Esq., and Eliot Alan Kolodny, Esq., Mellon, Webster & Mellon, and James H. Pickering, Jr., Esq., appearing on behalf of Plaintiff Eric V. Thomas, D.M.D. ("Thomas"), individually, as Administrator, and Administrator ad Prosequendum of the Estate of Tracy Rose Thomas, and as parent and natural guardian of Alix Thomas; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 18th day of November, 1999, hereby ORDERED that the Defendants' motions to dismiss for failure to state a claim are GRANTED in part, DENIED in part, and DISMISSED in part as follows:

1. The motions of Ford and TRW to dismiss claims by Thomas seeking recovery for the death of his unborn child are DENIED;

2. The motions of Ford and TRW to dismiss Thomas's claims for "hedonic damages" are DENIED;

3. The motions of Ford and TRW to dismiss Counts IX and XI of the Complaint are GRANTED. Thomas shall have twenty days from the filing of this Order to file an amended complaint re-pleading claims for breaches of express warranties;

4. The motion of TRW to dismiss Count VIII of the Complaint is GRANTED;

5. The motion of Ford to dismiss Count VI of the Complaint is DENIED;

6. The motions of Ford and TRW to dismiss Counts XII and XIII of the Complaint are GRANTED;

7. On the Court's own motion, Count I of the Complaint is DISMISSED for alleging certain claims for which relief may not be granted;

8. Thomas shall have twenty days from the filing of this Order to file an amended complaint re-pleading a claim for Wrongful Death that seeks the appropriate forms of recovery under New Jersey's Wrongful Death Act.