Eric V. THOMAS, D.M.D., individually, as Administrator, and Administrator ad Prosequendum of the Estate of Tracy Rose Thomas, and as parent and natural guardian of Alix Thomas, Plaintiff,

v.

FORD MOTOR COMPANY and TRW, Inc., Defendants.

Civ. A.No. 99–451.

United States District Court, D. New Jersey.

April 11, 2001.

---

James H. Pickering, Jr., South Seaville, NJ, Thomas E. Mellon, Jr., Elliot Alan Kolodny, Mellon, Webster & Mellon, Doylestown, PA, Carl D. Poplar, Poplar & Eastlack, Turnersville, NJ, for Plaintiff.

William J. Conroy, Cabaniss, Conroy & McDonald, LLP, Turnersville, NJ, Floyd Abrams, Susan Buckley, Cahill Gordon & Reindel, New York City, Glenn Alan Zeitz, Haddonfield, NJ, for Ford Motor Company.

Robert J. Hafner, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Mount Laurel, NJ, for TRW, Inc.

## OPINION

ORLOFSKY, District Judge.

In this hotly contested products liability case, the parties have appealed and cross-appealed from a decision of United States Magistrate Judge Joel B. Rosen which requires this Court to examine the scope of New Jersey's so-called "litigation privilege" and the reach of the first clause of 42 U.S.C. § 1985(2), a post Civil War civil rights statute, which prohibits conspiracies to intimidate or retaliate against parties, witnesses or grand or petit jurors in any court of the United States.

At its inception, this wrongful death products liability case, brought under New Jersey law, presented claims, defenses and issues typically associated with such an action.[1] In his original Complaint, Plain-

1. Indeed, this Court addressed several such issues in an earlier Opinion filed in this case.

tiff Eric Thomas ("Thomas"), asserted claims relating to injuries that allegedly resulted from the improper activation of airbags in a low-speed automobile collision. Thomas is suing Defendants Ford Motor Company ("Ford") and TRW, Inc. ("TRW")[2] for injuries allegedly caused by airbags installed on Thomas's 1996 Ford Explorer. Specifically, Thomas contends that the Explorer's airbags deployed improperly when the Thomas family was involved in a minor traffic accident. Thomas claims that he suffered injuries as a result of the improper deployment of the airbags and that the airbags caused the death of his pregnant wife.

Throughout the course of discovery in this case, Ford has developed and asserted a defense theory that removes this case from the mainstream of unremarkable products liability actions. Ford contends that Thomas, and not any airbag, caused the death of his pregnant wife. In response to Ford's defense that Thomas caused the death of his wife, Thomas moved to amend his Complaint to assert claims of intentional infliction of emotional distress, defamation and a violation of 42 U.S.C. § 1985(2) against Ford. Thomas also seeks punitive damages stemming from those claims.

Presently before this Court is an appeal and a cross-appeal of Magistrate Judge Rosen's Opinion and Order of August 31, 2000, granting in part and denying in part Thomas's Motion for Leave to File a Second Amended Complaint. *See Thomas v. Ford Motor Co.*, 111 F.Supp.2d 529 (D.N.J. 2000). Ford appeals from Magistrate Judge Rosen's decision to grant Thomas leave to amend his Amended Complaint to add claims of intentional infliction of emotional distress, defamation and punitive

damages against Ford. Thomas cross-appeals from Magistrate Judge Rosen's denial of leave to amend to add a claim asserting a violation of 42 U.S.C. § 1985(2). This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.

For the reasons discussed below, Magistrate Judge Rosen's Opinion and Order of August 31, 2000 is AFFIRMED IN PART and REVERSED IN PART. Magistrate Judge Rosen's Opinion denying Thomas's motion for leave to amend to assert a claim under 42 U.S.C. § 1985(2) is AFFIRMED. Magistrate Judge Rosen's Opinion granting Thomas leave to amend to assert claims of defamation and intentional infliction of emotional distress, and for punitive damages stemming from such claims, is REVERSED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Proposed Second Amended Complaint alleges that on February 9, 1997, Thomas and his family were traveling in the Thomas's 1996 Ford Explorer on Hand Avenue in Cape May Court House, New Jersey. Prop. Second Am. Compl. at ¶ 14 (filed May 19, 2000). Thomas's wife, Tracy Rose Thomas ("Tracy Thomas"), who was six-months pregnant at the time, was driving. *Id.* Thomas and his daughter, Alix Thomas, were passengers. *Id.* Thomas claims that his wife noticed a deer in the road, and attempted to avoid hitting the deer, but in doing so struck a utility pole. *Id.* at ¶ 17. Thomas further alleges that the accident was a relatively minor one because his wife was driving slowly when the accident occurred because of inclement weather conditions. *Id.* at ¶¶ 16, 18, 19. Nevertheless, the Explorer's driver's side

---

*See Thomas v. Ford Motor Co.*, 70 F.Supp.2d 521 (D.N.J.1999).

**2.** On October 12, 1999, Thomas voluntarily dismissed Breed Technologies as a party to the action. *See Notice of Voluntary Dismissal* (filed Oct. 12, 1999).

and passenger-side airbags deployed. *Id.* at ¶¶ 20, 23. Thomas alleges that the airbags should not have deployed because the accident involved a relatively low-speed collision with the utility pole. *Id.* at ¶¶ 20, 22, 23. He also claims that the deployment of the airbags proximately caused his wife's death and the death of his unborn child, as well as his and his daughter's injuries. *Id.* at ¶¶ 21–24. He filed this action on his own behalf, on behalf of the Estate of Tracy Rose Thomas, and on behalf of his daughter, Alix Thomas, *Id.* at ¶ 4, seeking recovery from Ford, the manufacturer of the Explorer, and from TRW, the alleged manufacturer of airbag components installed in the Thomas's Explorer. *Id.* at ¶¶ 5–6.

Thomas filed his initial Complaint on February 1, 1999. This Court issued an Opinion and Order on Ford and TRW's motions to dismiss on November 18, 1999. *See Thomas v. Ford Motor Co.,* 70 F.Supp.2d 521 (D.N.J.1999). Thereafter, Thomas filed an Amended Complaint on December 8, 1999. Since then, the parties have engaged in contentious discovery proceedings. Throughout discovery, Ford has developed and maintained its theory that Thomas, and not the airbags, caused the death of his wife, Tracy Thomas.

Thomas filed a Motion for Leave to File a Second Amended Complaint on May 19, 2000. The proposed amendments to Thomas's Complaint are based on alleged acts of Ford during the course of discovery in this case. Thomas alleges that Ford contacted the Office of the Prosecutor for Cape May County, the Office of the County Medical Examiner for Cape County and the Middle Township Police Department (the "local authorities") in an attempt to persuade these entities that Thomas killed his wife, Tracy Thomas. Prop. Second Am. Compl. at ¶¶ 79–80. Through his proposed amendments Thomas alleges that by contacting these entities and asserting that Thomas killed his wife, Ford violated his civil rights under 42 U.S.C. § 1985(2), caused him emotional distress and committed the tort of defamation. *Id.* at ¶¶ 89–92, 93–97 and 98–106.

## II. STANDARD OF REVIEW

The Federal Magistrates Act of 1968 (the "FMA") created the position now known as Magistrate Judge and allowed District Courts to refer a host of matters to Magistrate Judges for determinations subject to various levels of review by the District Courts. *See* 28 U.S.C. § 636(b)(1).

Subparagraph A of § 636(b)(1) provides for a District Court to review a Magistrate Judge's determination of a non-dispositive order, while subparagraph B governs the review of a Magistrate Judge's report and recommendation concerning a dispositive order.[3] The Federal Rules of Civil Procedure and the Local Civil Rules of the District of New Jersey each contain corresponding provisions. *See* Fed.R.Civ.P.

---

**3.** The FMA provides, in relevant part:
Notwithstanding any provision of law to the contrary—
(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except [dispositive motions]. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.
(B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for disposition, by a judge of the court, of any motion excepted in subparagraph (A)
... A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is taken.
28 U.S.C. § 636(b)(1)(A)-(B).

72(a), 72(b); Local Civ. R. 72.1(c)(1), 72.1(c)(2).

The FMA requires a District Court to review a Magistrate Judge's report and recommendation *de novo.* 28 U.S.C. § 636(b)(1)(B); *accord* Fed.R.Civ.P. 72(b); Local Civ. R. 72.1(c)(2). Regarding non-dispositive motions, the FMA provides that a District Court may reverse a Magistrate Judge's determination only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *accord* Fed.R.Civ.P. 72(a); Local Civ. R. 72.1(c)(1).

 Thus, on a non-dispositive motion, this Court will review a Magistrate Judge's findings of fact for clear error. *See Lithuanian Commerce Corp. v. Sara Lee Hosiery,* 177 F.R.D. 205, 213 (D.N.J. 1997) (Orlofsky, J.); *Lo Bosco v. Kure Engineering Ltd.,* 891 F.Supp. 1035, 1037 (D.N.J.1995). A finding is clearly erroneous only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lo Bosco,* 891 F.Supp. at 1037 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). In reviewing a Magistrate Judge's factual determinations, a District Court may not consider any evidence which was not presented to the Magistrate Judge. *See Haines v. Liggett Group, Inc.,* 975 F.2d 81, 92 (3d Cir. 1992).

 Where a Magistrate Judge is authorized to exercise his or her discretion in determining a non-dispositive motion, the decision will be reversed only for an abuse of that discretion. *See Lithuanian Commerce Corp.,* 177 F.R.D. at 214; *see also Kresefky v. Panasonic Communications and Sys. Co.,* 169 F.R.D. 54, 64 (D.N.J. 1996).

 On the other hand, this Court will conduct a *de novo* review of a Magistrate

Judge's legal conclusions reached in considering a non-dispositive motion. *See Lithuanian Commerce Corp.,* 177 F.R.D. at 214; *see also Haines,* 975 F.2d at 91 ("the phrase 'contrary to law' indicates plenary review as to matters of law").

Motions to amend are usually considered non-dispositive motions. Because Magistrate Judge Rosen's order disposed of Thomas's proposed claim under 42 U.S.C. § 1985(2), however, his decision does contain dispositive elements. Because, as explained below, the issues on appeal here involve Magistrate Judge Rosen's legal conclusions, the proper standard of review is *de novo,* whether his decision below is considered dispositive or non-dispositive. Accordingly, I will review Magistrate Judge Rosen's legal conclusions *de novo.*

### III. DISCUSSION

#### A. The Legal Standard Governing Motions to Amend

The legal standard governing a Motion to Amend is well settled. Leave to file an amended pleading "shall be freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). " 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997).

#### B. Ford's Appeal

#### 1. Magistrate Judge Rosen's Opinion

Before Magistrate Judge Rosen, Ford challenged Thomas's proposed addition of claims of intentional infliction of emotional

distress and defamation on the theory that such amendments would be futile. Ford argues that such amendments would be futile because Ford's actions which formed the basis of those proposed claims are protected by the litigation privilege, which would absolutely bar any emotional distress or defamation claim against Ford. Magistrate Judge Rosen rejected Ford's argument, concluding that Ford's alleged contacts with the local authorities concerning the death of Tracy Thomas were not protected by an absolute litigation privilege. *Thomas v. Ford Motor Co.,* 111 F.Supp.2d 529 (D.N.J.2000). Instead, Magistrate Judge Rosen held that those contacts were protected by a qualified litigation privilege, which required a finding of malice to defeat the privilege. *Thomas,* 111 F.Supp.2d at 541–42. Accordingly, Magistrate Judge Rosen concluded that the proposed amendment to assert claims of emotional distress and defamation claims would not be futile. Therefore he permitted the amendment to include those claims. *Id.* at 542.

In his Opinion, Magistrate Judge Rosen stated that "New Jersey law recognizes both a qualified and absolute litigation privilege." *Id.* at 539 (citing *Fees v. Trow,* 105 N.J. 330, 336, 521 A.2d 824 (1987)). Magistrate Judge Rosen also recognized that the absolute litigation privilege "is broadly construed to encompass all conduct related to the litigation, whether in or out of court, whether in the pre-trial phase or during the trial, whether or not under oath, and whether committed by a litigant, an attorney or an attorney's agent," and that "while originally limited to defamatory statements, the privilege has been extended to bar several other types of suits, including those involving the intentional infliction of emotional distress." *Id.* at 539–40.

Magistrate Judge Rosen's Opinion also reiterates the four-part test announced by the New Jersey Supreme Court in *Hawkins v. Harris,* 141 N.J. 207, 661 A.2d 284 (1995), that is used to determine when the litigation privilege applies. As explained by Magistrate Judge Rosen, "[s]uch an absolute privilege can be established if the statement (1) is made in the course of judicial or quasi-judicial proceedings (2) by litigants or other participants authorized by law (3) to achieve the objects of the litigation (4) where the statements have some logical relationship or connection to the action." 111 F.Supp.2d at 539 (quoting *Hawkins,* 141 N.J. at 216, 661 A.2d 284). Magistrate Judge Rosen also explained that "[b]ecause of the privilege's breadth, the touchstone of the absolute litigation privilege has become the court's control over the alleged defamatory or otherwise abusive conduct." *Id.* at 540.

After considering this issue of control, Magistrate Judge Rosen concluded:

> Notwithstanding the various tools available to this court to control litigation, litigants and attorneys, this court can see no basis upon which to control Ford's contact with state prosecutorial agents related to the institution of a criminal charge. The court would clearly have authority to sanction Ford, its attorneys or other agents for any discovery-related contact they may have had with state law enforcement authorities, and the court extends the privilege to any such contact by Ford. Yet, it is not this conduct for which the plaintiff seeks a remedy. Rather, the plaintiff has sued Ford, and Ford alone, for its contact with state law enforcement authorities related to the institution of a separate criminal investigation against Dr. Thomas.

*Id.* at 541. Based on this perceived lack of judicial control, and no doubt influenced by New Jersey case law holding that persons who communicate information to law enforcement officials are afforded a qualified

privilege, Magistrate Judge Rosen concluded that a qualified litigation privilege, and not an absolute litigation privilege, applied in these circumstances. *Id.* at 541–42 (citing *Geyer v. Faiella,* 279 N.J.Super. 386, 652 A.2d 1245 (App.Div. 1995)).

Ford now challenges Magistrate Judge Rosen's Opinion, arguing that it is based on an incorrect interpretation and application of New Jersey law governing the litigation privilege. Specifically, Ford contends that Magistrate Judge Rosen's Opinion contains three main flaws: (1) an incorrect assumption that New Jersey's litigation privilege can be either absolute or qualified; (2) an absence of application of the four-part test established by the New Jersey Supreme Court in *Hawkins* in combination with an improper interpretation of the role of the question of "control" and (3) assuming the emphasis on control is valid, an incorrect assumption that this Court lacks the requisite control over Ford to include Ford's alleged actions under the umbrella of the absolute litigation privilege. Ford Mem. of Law in Supp. of App. at 27–28.

### 2. *De Novo* Review

In *Hawkins v. Harris,* the New Jersey Supreme Court reviewed the long history of the litigation privilege. Quoting itself, the New Jersey Supreme Court explained that:

> Although defamatory, a statement will not be actionable if it is subject to an absolute or qualified privilege. *A statement made in the course of judicial, administrative, or legislative proceedings is absolutely privileged and wholly immune from liability.* That immunity is predicated on the need for unfettered

expression critical to advancing the underlying government interest at stake in those settings.

*Hawkins,* 141 N.J. at 213, 661 A.2d 284 (quoting *Erickson v. Marsh & McLennan Co., Inc.,* 117 N.J. 539, 569 A.2d 793 (1990))(emphasis added).

Despite Magistrate Judge Rosen's assertion to the contrary, this Court was unable to locate any reported precedent that supports the notion that a qualified litigation privilege exists under New Jersey law. The history of the litigation privilege instead reveals that it was created as an absolute privilege. If it applies, it protects absolutely, making the speaker "wholly immune" from liability. *Id.; see also Peterson v. Ballard,* 292 N.J.Super. 575, 581, 679 A.2d 657 (App.Div.1996) (explaining that "[s]tatements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability"); *Thomason v. Lehrer, P.C.,* 183 F.R.D. 161, 166 (D.N.J.1998)(Orlofsky, J.)(stating that the privilege makes statements "absolutely immune from liability"); *Ruberton v. Gabage,* 280 N.J.Super. 125, 132, 654 A.2d 1002 (App.Div.1995)(describing that a statement covered by the privilege is "absolutely privileged and wholly immune from liability").

*Fees v. Trow,* upon which Magistrate Judge Rosen relied in concluding that the litigation privilege in New Jersey can be absolute or qualified, does recognize that qualified and absolute privileges exist under New Jersey law. *Fees,* 105 N.J. at 336, 521 A.2d 824. Nowhere, however, does the New Jersey Supreme Court in *Fees* state that the *litigation* privilege itself can be qualified or absolute.[4] In fact,

---

4. While the litigation privilege, for example, protects absolutely if it applies, there are other privileges under New Jersey law that offer only qualified protection, if they apply. For example, in *Fees,* the New Jersey Supreme Court determined that a state employee could be entitled to a qualified privilege in making a

the litigation privilege was not at issue in *Fees*. The issue of whether the litigation privilege applies is an all-or-nothing concept. Either it applies, and therefore protects absolutely, or it does not apply, and offers no protection.[5]

In *Hawkins*, adopting the standard set forth by the California Supreme Court, the New Jersey Supreme Court established that the litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins*, 141 N.J. at 216, 661 A.2d 284 (quoting *Silberg v. Anderson*, 50 Cal.3d 205, 266 Cal.Rptr. 638, 786 P.2d 365 (Ca. 1990)). Whether the absolute litigation privilege applies is a question of law. *Hawkins*, 141 N.J. at 216, 661 A.2d 284. If Ford's statements to the local authorities meet each element articulated by the New Jersey Supreme Court in *Hawkins* and the litigation privilege attaches, Thomas's defamation and emotional distress claims would be futile because of the absolute protection afforded by the litigation privilege. Therefore, to determine whether Thomas's proposed amendments would be futile, I must begin my analysis by considering the four elements of the *Hawkins* test.

### a. Were Ford's statements made in the course of judicial proceedings?

As explained by Magistrate Judge Rosen, New Jersey courts have held that the litigation privilege extends beyond statements made in a courtroom. *See, e.g.,*

*Peterson*, 292 N.J.Super. at 581, 679 A.2d 657; *DeVivo v. Ascher*, 228 N.J.Super. 453, 457–58, 550 A.2d 163 (App.Div.1988)(adopting a broad view of the phrase "in the course of a judicial proceeding").[6] In *Hawkins*, the New Jersey Supreme Court explained that the privilege applies to investigatory pre-trial actions, because "[o]ne purpose of the privilege is to encourage 'open channels of communication and the presentation of evidence' in judicial proceedings." 141 N.J. at 216–17, 661 A.2d 284 (quoting *McClatchy Newspapers, Inc. v. Superior Court*, 189 Cal.App.3d 961, 970, 234 Cal.Rptr. 702 (Ca.App.1987)).

While Thomas's Memorandum of Law does not clearly express which prong or prongs of the *Hawkins* analysis he believes Ford can not satisfy, it appears that Thomas argues that Ford can not satisfy this first prong of the *Hawkins* analysis. In his memorandum of law in opposition to Ford's appeal, Thomas refers to Ford's statements to the local authorities as "OUTSIDE of the litigation process," or "*OUTSIDE* the litigation arena" Pl.'s Mem. of Law in Opp. to Ford App. and in Supp. of Cross–App. at 2, 12 (emphasis in original). Thomas contends that because Ford's statements were made outside of the litigation process, in other words, not in the course of judicial proceedings, Ford fails the *Hawkins* test and the litigation privilege does not apply.

In the alternative, Thomas argues that because this issue is before this Court on a Motion to Amend, this Court should accept Thomas's contention that Ford's statements were made outside of the litigation arena, allow amendment, wait for a full factual record to be developed, and then

---

defamatory report of another employee's misconduct. *Fees*, 105 N.J. at 333, 521 A.2d 824.

**5.** Of course, a statement, though not protected by the litigation privilege, could be protected by another privilege.

**6.** The privilege has also been held to apply to more than just defamation claims. Among other claims, the privilege also applies to claims of intentional infliction of emotional distress. *See Peterson*.

rule on a summary judgment motion whether Ford's statements were made in the course of a judicial proceeding. *Id.* at 23. According to Thomas, "[a]t this stage of the proceedings, little is known about the subject communications. What was communicated by whom to whom for what purpose and in what context is completely unknown.... Clearly, dismissal of these claims is inappropriate until Plaintiff has had an opportunity to develop a full factual record on this critical point." *Id.* at 16. Thomas further contends that "[a]t this stage, ... the Court can only accept the allegations of the Proposed Amended Complaint that these communications were made outside the scope of the judicial proceedings with the sole purpose to intimidate the Plaintiff into dropping his lawsuit." *Id.* at 23.[7]

Thomas also contends that Ford's purpose in making the statements at issue could not have been "legitimate investigation" because "Ford had already conducted two depositions of the medical examiner and, had the opportunity, if it so wished, to seek depositions of the other individuals. The reason Ford did not, of course, is that the purpose of these communications was to intimidate and harass Dr. Thomas outside of the judicial proceeding and not to pursue some legitimate litigation purpose." *Id.* at 23–24.

If the question of whether Ford's statements were made during the course of a judicial proceeding was a question of fact, Thomas's argument that this Court is required to accept as true his allegation that the statements occurred outside of the litigation process would be correct. Whether Ford's statements were made during the course of a judicial proceeding, however, is

a question of law. *Hawkins*, 141 N.J. at 216, 661 A.2d 284. Obviously, this Court is not obliged to accept Thomas's legal conclusions. Therefore, Thomas's contention that Ford's statements were made outside of the litigation context is not binding on this Court.

Thus, it is for this Court to determine as a matter of law whether Ford's alleged statements to the local authorities were made in the course of a judicial proceeding. In his Memorandum of Law, Thomas argues that whether Ford's statements were made outside the litigation process is bound up with Magistrate Judge Rosen's determination that this Court's purported lack of control precluded the application of an absolute litigation privilege to this case. According to Thomas, "[a]pparently, this question of control is how the law of New Jersey determines whether or not the alleged conduct was made in the course of judicial proceedings." Pl.'s Mem. of Law in Opp. to Ford App. and in Supp. of Cross–App. at 20. Because Thomas has presented this "link," it is appropriate to analyze Magistrate Judge Rosen's treatment of the issue of judicial control.

Magistrate Judge Rosen's discussion of judicial control appears to have been influenced by a paragraph in *Hawkins* inserted by the New Jersey Supreme Court after application of the four-part test to the case before it. That paragraph begins with the statement that "[b]ecause of their extraordinary scope, absolute privileges 'have been limited to situations in which authorities have the power both to discipline persons whose statements exceed the bounds of permissible conduct and to strike such statements from the record....' The abso-

---

7. In support of this argument, Thomas points to the fact that *Hawkins* involved a motion for summary judgment. *Id.* at 16. In *Hawkins*, however, the plaintiff had filed a separate, subsequent suit claiming defamation and oth-

er claims, rather than amending her complaint during the underlying suit. In addition, Thomas does not point to any language in *Hawkins* that limits its application to motions for summary judgment.

lute privilege 'does not extend to statements made in situations for which there are no safeguards against abuse.' " *Hawkins* at 220–21, 661 A.2d 284 (quoting *Moore v. Smith*, 89 Wash.2d 932, 578 P.2d 26, 29 (1978) and *Demopolis v. Peoples Nat'l Bank*, 59 Wash.App. 105, 796 P.2d 426, 431 (1990)). The New Jersey Supreme Court then cites *Rainier's Dairies v. Raritan Valley Farms, Inc.*, 19 N.J. 552, 117 A.2d 889 (1955), and *Binkewitz v. Allstate Ins. Co.*, 222 N.J.Super. 501, 537 A.2d 723 (App.Div.1988), two cases that explain that judicial control is an effective check against the potential harm presented by application of an absolute privilege. *Hawkins* at 221, 661 A.2d 284. The New Jersey Supreme Court closed the paragraph by stating that "[a] corresponding burden, then, that flows from the benefits of the privilege is an attorney's ethical and professional responsibility. . . ." *Id.*

The meaning of this paragraph is of some dispute. Magistrate Judge Rosen relied upon the paragraph to support his determination that "the touchstone of the absolute litigation privilege has become the court's control over the alleged defamatory or otherwise abusive conduct." *Thomas*, 111 F.Supp.2d at 540. Not surprisingly, Thomas agrees with that interpretation. Ford, on the other hand, argues that this interpretation lends more weight to the paragraph than it is due. Ford asserts that the correct analysis is the application of the four prongs expressly laid out in *Hawkins*, and nothing more. Ford argues that Magistrate Judge Rosen's focus on control effectively added a fifth prong to the *Hawkins* analysis. Ford Mem. of Law in Supp. of App. at 31.

This Court is not convinced that Magistrate Judge Rosen's treatment of the issue of judicial control is the correct approach. A court's control over litigants and their representatives is often cited as a foundational justification for the litigation privi-

lege's absolute, as opposed to qualified, protection. *See, e.g., Rainier's Dairies v. Raritan Valley Farms, Inc.*, 19 N.J. 552, 562, 117 A.2d 889 (1955)(explaining that the formal requirements and control inherent in a court proceeding mitigates potential harm); *Peterson*, 292 N.J.Super. at 588, 679 A.2d 657 (same).

■ But the New Jersey Supreme Court did not include judicial control as a fifth prong of the *Hawkins* analysis. *Hawkins* articulated four factors, and explained that the litigation privilege applies if these four factors are met. The New Jersey Supreme Court did *not* state or suggest that even if the four factors are met, there is no litigation privilege if there is a lack of judicial control. Therefore, this Court respectfully disagrees with Magistrate Judge Rosen to the extent that his Opinion holds that considerations of judicial control are an additional limitation on the four-part *Hawkins* analysis.

This Court also disagrees with Magistrate Judge Rosen's conclusion that this Court would not have the authority to reprimand or control Ford's behavior in contacting the local authorities. I see no reason why this Court could not sanction Ford or its counsel for their behavior, should their conduct require such action. Thomas has failed to explain how this Court's ability to discipline Ford or its counsel for their statements here is any different from its ability to discipline Ford for statements it may make to other witnesses.

This Court also disagrees that *Geyer v. Faiella*, 279 N.J.Super. 386, 652 A.2d 1245 (App.Div.1995), is dispositive of this case. In *Geyer*, the Appellate Division did generally conclude that the litigation privilege does not attach to initial complaints to law enforcement authorities. 279 N.J.Super. at 392, 652 A.2d 1245. In *Geyer*, however, the initial complaint to law enforcement did not take place in the context of ongoing

litigation. Also, the report to law enforcement authorities in *Geyer* was not linked to a defense theory in already ongoing litigation. In *Geyer*, the Appellate Division reasoned that the litigation privilege should not apply to the making of an initial complaint to law enforcement because at the time of the initial complaint, there is no court supervision. That is simply not the case here. Because Ford's communications took place in the context of ongoing litigation, the same concern about a lack of judicial supervision at the time of contact with law enforcement does not exist. Thus, the Appellate Division in *Geyer* did not address the exact issue presented here. Also, it is noteworthy that *Geyer* pre-dates *Hawkins*.

■ In describing whether a statement occurred in the course of a judicial proceeding, the New Jersey Supreme Court explained that "the privilege extends to 'preliminary conversations' and interviews between a prospective witness and an attorney if they are in some way related to or connected with a pending or contemplated action." *Hawkins*, 141 N.J. at 216, 661 A.2d 284 (quoting *Ascherman v. Natanson*, 23 Cal.App.3d 861, 100 Cal.Rptr. 656 (1972)). Additionally, "[j]ust as we wish witnesses to have absolute freedom to express the truth as they view it, we wish parties to have an unqualified opportunity to explore the truth of a matter without fear of recrimination." *Id.* at 217, 661 A.2d 284.

■ For the purposes of this analysis, this Court will accept as true Thomas's characterization of the statements at issue, that Ford's sole purpose in making the statements was to instigate a criminal investigation. Even if this were Ford's only motivation, this Court's fails to apprehend how this would remove the statements from the course of a judicial proceeding. If whether Thomas caused the death of his wife is part of Ford's defense, the New

Jersey Supreme Court has directed that Ford may have "an unqualified opportunity to explore the truth" of that theory "without fear of recrimination." Pursuing the truth of that defense in this case, given the nature of the defense, may, in fact, require contact with law enforcement. Therefore, I conclude on the facts of this case that Ford's alleged statements were made in the course of a judicial proceeding.

**b. Were Ford's statements made by litigants or other participants authorized by law?**

In *Hawkins*, the New Jersey Supreme Court explained that "[t]he immunity that attends judicial proceedings 'protects both counsel and other representatives who are employed to assist a party in the course of litigation.'" 141 N.J. at 219, 661 A.2d 284 (quoting *Petty v. General Accident Fire & Life Assurance Corp.*, 365 F.2d 419, 421 (3d Cir.1966)).

Thomas alleges that Mr. Conroy (Ford's attorney), Joseph Wills (Ford Engineer and expert witness) and Gerald Corwin (Ford's consultant) made the statements at issue. Prop. Second Am. Compl. at ¶ 79. All of these individuals are clearly either litigants or other participants authorized by law. Thomas does not dispute that Ford has satisfied this prong of the *Hawkins* analysis.

**c. Were Ford's statements made to achieve the objects of the litigation?**

The New Jersey Supreme Court has explained that pretrial investigation is "essential to the achievement of the objects of litigation." *Hawkins*, 141 N.J. at 218, 661 A.2d 284. If an investigative act is undertaken to achieve the object of the litigation, then this prong is satisfied. *See Peterson*, 292 N.J.Super. at 589, 679 A.2d 657 (holding that an interview concerning a witness' knowledge of the underlying liti-

gation was undertaken to achieve the object of that underlying litigation).

In Ford's view, its object in this litigation is to secure a finding that it is not liable for the injury Thomas alleges was caused by airbag impact. Because Ford's communication with the local authorities was obviously undertaken to achieve this object, it follows that the communication was made to achieve an object of the litigation.

### d. Did Ford's statements have some connection or logical relation to the action?

For the litigation privilege to apply, the statements at issue must bear some connection or logical relation to the litigation. The relation required is not equated with the technical legal relevance required under evidentiary rules. The relationship required is one of "a general frame of reference and relationship to the subject matter of the action." *Hawkins,* 141 N.J. at 218, 661 A.2d 284 (quoting *Fenning v. S.G. Holding Corp.,* 47 N.J.Super. 110, 117, 135 A.2d 346 (App.Div.1957)). Relatedness depends on whether Ford's statements are "in any way relevant to the proceedings." *Hawkins,* 141 N.J. at 219, 661 A.2d 284. Ford's statements regarding possible other causes of injury in a products liability action are certainly related for purposes of the *Hawkins* inquiry.

· As the above discussion reveals, Thomas's attempted assertion of claims of defamation and intentional infliction of emotional distress is futile because Ford is entitled to assert the litigation privilege, which absolutely protects it from liability against these claims. Therefore, the decision of Magistrate Judge Rosen is reversed as it relates to Thomas's proposed defamation and intentional infliction of

emotional distress claims, and Thomas's demand for punitive damages stemming from those claims.

This Court recognizes the serious nature of the allegations Ford has made against Thomas. These are not allegations that should be made lightly. As expressed by the New Jersey Supreme Court, "[t]he trouble with privileges is that they are granted to good and bad alike." *Hawkins,* 141 N.J. at 213, 661 A.2d 284. Ford must be aware that while Thomas's proposed civil claims may not be appropriate avenues to challenge Ford's behavior, Ford's statements regarding Thomas are still subject to the control of this Court and the rules of professional conduct governing Ford's attorneys.

### C. Thomas's Cross–Appeal

Magistrate Judge Rosen permitted an amendment to add emotional distress and defamation claims against Ford, but denied Thomas's request to add a claim under 42 U.S.C. § 1985(2) against Ford because he determined that such an amendment would be futile. Magistrate Judge Rosen held that even accepting as true all of the facts as pled by Thomas, Thomas could not state a claim that Ford had engaged in the type of force, intimidation or threat that is actionable under 42 U.S.C. § 1985(2). *Thomas,* 111 F.Supp.2d at 534. Thomas now appeals that determination. Whether Ford's behavior is actionable under 42 U.S.C. § 1985(2) is a question of law.

### 1. Section 1985(2)

The relevant language of 42 U.S.C. § 1985(2) provides that an action for damages may be brought: [8]

> If two or more persons in any State or Territory conspire to deter, by force,

---

**8.** Thomas's claim under section 1985(2) is alleged under the so-called "first clause" of that section. The second clause, not at issue here, addresses interference with state court proceedings. *See* 42 U.S.C. § 1985(2).

intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified[.]

While section 1985(2) is applicable to private actions, "[t]hat the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." *Griffin v. Breckenridge*, 403 U.S. 88, 101, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

As discussed by Magistrate Judge Rosen, the statute was enacted in response to intimidation of parties, witnesses and jurors resulting from the social upheaval following the Civil War. *See Thomas*, 111 F.Supp.2d at 534–35. The legislative history of the statute "bespeak[s] a Congressional intent to insulate witnesses, parties and grand or petit jurors from conspiracies to pressure or intimidate them in the performance of their duties, and an intent to guard against conspiracies the object of which is to deny citizens the equal protection of the laws." *Brawer v. Horowitz*, 535 F.2d 830, 839 (3d Cir.1976). The Third Circuit has explained that section 1985(2) is concerned "with conspiratorial conduct that directly affects or seeks to affect parties, witnesses or grand or petit jurors." *Id.* at 840.

Before Magistrate Judge Rosen and before this Court, Ford argues that Thomas's allegations can not establish the requisite elements of conspiracy, intimidation or injury under 42 U.S.C. § 1985(2). Ford Mem. of Law in Opp. to Cross–App. at 14–15. Because Magistrate Judge Rosen held that Thomas's proposed allegations did not state a claim of the requisite intimidation, however, this Court will focus on that element.

### 2. *De Novo* Review

Thomas argues that Magistrate Judge Rosen's decision should be reversed because his Proposed Second Amended Complaint sufficiently pleads a cause of action under 42 U.S.C. § 1985(2). Pl.'s Mem. of Law in Opp. to Ford App. and in Supp. of Cross–App. at 31. Thomas argues that he properly alleged that Ford has injured his emotional well-being and professional reputation because he filed suit against it. Thomas argues that those facts, if proved, would state a cause of action under 42 U.S.C. § 1985(2). *Id.* at 28–32. In the alternative, Thomas also argues that "whether or not Ford's conduct was extreme enough to constitute a violation of 42 U.S.C. § 1985(2) is a fact question that **CANNOT** be resolved in the context of Petition for Leave to Amend or a Motion to Dismiss." *Id.* at 34. (emphasis in original)

Thomas's alternative argument is based upon a faulty premise. The question before Magistrate Judge Rosen, and currently before this Court on appeal, is whether Ford's conduct, as alleged by Thomas, could constitute a violation of section 1985(2). This is not a factual question. The question is legal in nature, based on the assumption that all the facts pled by Thomas are true. In other words, the question for resolution is whether the facts pled by Thomas can support a claim under 42 U.S.C. § 1985(2). There is no reason why this Court cannot answer this question at this stage in the proceedings.

This Court concludes that the behavior alleged by Thomas in his Proposed Second Amended Complaint simply cannot sustain a claim under 42 U.S.C. § 1985(2). Thomas alleges that Ford, acting through its agents, engaged in a conspiracy to communicate with the Office of County Medical Examiner for Cape May County, Office

of the Prosecutor of Cape May County and the Middle Township Police Department. Prop. Second Am. Compl. at ¶¶ 78–79, 88, 90. According to the Proposed Second Amended Complaint, the purpose of the communication was to convince these local authorities that Thomas killed his wife, Tracy Thomas, and to intimidate and deter Thomas from proceeding with his lawsuit against Ford. *Id.* at ¶¶ 80–81, 83, 90. These facts, even if proven, could not support a violation of section 1985(2).

In *Brawer*, the Third Circuit upheld the dismissal of a complaint for failure to state a claim under section 1985(2). The *Brawer* complaint contained allegations that "a federal prosecutor and a cooperating witness had conspired to use perjured testimony and to conceal exculpatory evidence in order to convict [the plaintiffs]." *Brawer* at 832. The Third Circuit held this alleged behavior could not support a claim under section 1985(2) because, "[a]t best, the allegation is that the conspiracy 'influenced' the jurors by precluding them from considering fully accurate evidence. We deem this 'influence' to be too remote to fit within the intended ambit of s 1985(2)." *Id.* at 840.

The Tenth Circuit has similarly explained that the alleged conspiracy "must be one that has the requisite statutory purpose." *Brown v. Chaffee*, 612 F.2d 497, 502 (10th Cir.1979). In *Brown*, the Tenth Circuit concluded that the plaintiff had not stated a claim under section 1985(2). There, the plaintiff alleged that his attorneys, in a previous action, had conspired to deter or intimidate him from freely testifying in that previous action due to an alleged conflict of interest and an alleged ineffective defense. *Id.* The Tenth Circuit concluded that "[i]f proved, these facts may demonstrate a conspiracy to prevent [plaintiff] from effectively defending the

action, but they do not show any direct deterrence of Brown's testimony." *Id.*

Therefore, actions may occur during the course of litigation which may be objectionable, undesirable or even subject to court discipline, but such actions are not necessarily violative of section 1985(2). As revealed by *Brawer* and *Brown,* the behavior complained of must match the purpose and reach of the statute.

For example, the plaintiff did state a cause of action under section 1985(2) in *Chahal v. Paine Webber Inc.*, 725 F.2d 20 (2d Cir.1984). In *Chahal,* the plaintiffs alleged that Paine Webber had engaged in a conspiracy to intimidate an expert witness from testifying in their behalf. *Id.* at 22. Specifically, the plaintiffs alleged that a representative of Paine Webber contacted the expert witness's employer and convinced the employer to threaten the expert witness with termination if he testified in the plaintiffs' behalf. *Id.* The Second Circuit held that this allegation of direct intimidation stated a claim under section 1985(2). *Id.* at 25.

The plaintiffs in *Brever v. Rockwell International Corp.*, 40 F.3d 1119 (10th Cir. 1994) also stated a valid claim under section 1985(2). In *Brever,* the plaintiffs claimed their rights under section 1985(2) were violated because they were subject to intimidation regarding their cooperation with the Federal Bureau of Investigation's inquiry into environmental crimes occurring at their place of employment. *Brever,* 40 F.3d at 1123. The alleged intimidating behavior consisted of, among other things, .creation of hazardous working conditions, illegal entrance into the plaintiffs' homes, harassing phone calls, illegal wiretapping, vandalizing of vehicles, firing of gunshots into one plaintiff's yard, threats of bodily injury and attempted arson of one plaintiff's home. *Id.* at 1124.[9]

---

**9.** Thomas argues that in *Heffernan v. Hunter,* 189 F.3d 405 (3d Cir.1999), the Third Circuit

Both *Chahal* and *Brever* are readily distinguishable from this case. The plaintiffs in both *Chahal* and *Brever* alleged a type of direct intimidation that is missing from Thomas's Proposed Second Amended Complaint. In addition, neither in *Chahal*, nor *Brever* was the alleged intimidation intertwined with a defense theory. Here, Ford is developing a defense that Thomas was the cause of his wife's death. As unpleasant as that defense may be, the fact that Ford's alleged communications are relevant to that defense make this case distinguishable from the scenarios alleged in *Chahal* and *Brever*. Thomas's interpretation of the purpose and reach of 42 U.S.C. § 1985(2) would permit claims under that section in every case where a defendant incorporates any form of personal attack into his or her defense. This is certainly not the intended scope of section 1985(2). Therefore, Magistrate Judge Rosen's refusal to grant Thomas leave to amend to add a claim under 42 U.S.C. § 1985(2) was appropriate.[10]

## IV. CONCLUSION

For the reasons described above, Magistrate Judge Rosen's Opinion and Order of August 31, 2000 is AFFIRMED IN PART and REVERSED IN PART. The Opinion is AFFIRMED with regard to Thomas's proposed claim under 42 U.S.C. § 1985(2). The Opinion is REVERSED with respect to Thomas's claims of defamation and intentional infliction of emotional distress, and with respect to Thomas's demand for punitive damages stemming from those

claims. The Court will enter an appropriate form of order.

## ORDER

This matter having come before the Court on the Appeal of Defendant, Ford Motor Company, and the Cross Appeal of Plaintiff, Eric V. Thomas, D.M.D., of the August 31, 2000 Opinion and Order of Magistrate Judge Joel B. Rosen, Thomas E. Mellon, Jr., Esq. and Elliot Alan Kolodny, Esq. of Mellon, Webster & Mellon and Carl D. Poplar, Esq. of Poplar & Eastlack, and James H. Pickering, Jr., Esq. appearing on behalf of Plaintiff, Eric V. Thomas, D.M.D., and William J. Conroy, Esq. of Cabaniss, Conroy & McDonald, LLP, Floyd Abrams, Esq. and Susan Buckley, Esq. of Cahill Gordon & Reindel and Glenn Alan Zeitz, Esq., appearing on behalf of Defendant, Ford Motor Company, and Robert J. Hafner, Esq. of Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, appearing on behalf of Defendant TRW, Inc.; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 11th day of April, 2001, hereby ORDERED that Magistrate Judge Rosen's Opinion and Order of August 31, 2000 is AFFIRMED IN PART and REVERSED IN PART as follows:

(1) Magistrate Judge Rosen's Opinion denying Thomas's motion for leave to amend to assert a claim under 42 U.S.C. § 1985(2) is AFFIRMED, and;

---

recognized that the filing of a frivolous lawsuit to intimidate a potential witness may violate section 1985(2). Pl.'s Mem. of Law in Opp. to Ford App. and in Supp. of Cross–App. at 26. In *Heffernan,* however, the Third Circuit expressly stated that because the plaintiff could not establish the conspiracy element, the Court need not "determine whether the defendants activities amounted to 'force, in-

timidation or threat.' " 189 F.3d at 411 n. 4. Therefore, this Court disagrees with Thomas's interpretation of *Heffernan.*

**10.** Because I affirm Magistrate Judge Rosen's Opinion, I need not address here whether Thomas adequately pled the elements of conspiracy and injury.

(2) Magistrate Judge Rosen's Opinion granting Thomas leave to amend to assert claims of defamation and intentional infliction of emotional distress, and for punitive damages stemming from such claims, is REVERSED.